**801 NOLANA, INC., f/k/a Falcon Development Company, Appellant,**

v.

**RTC MORTGAGE TRUST 1994–S6, A Delaware Business Trust and State Street Bank & Trust Co., et al., Appellees.**

No. 13–95–292–CV.

Court of Appeals of Texas, Corpus Christi.

April 30, 1997.

Rehearing Overruled May 29, 1997.

J. Mitchell Clark, Shelby Jordan, Jordan & Shaw, Corpus Christi, Francisco J. Rodriguez, Rodriguez, Prunedo, Tovar, Enriquez & Calvillo, McAllen, for appellant.

Jose E. Garcia, Law Offices of Jose E. Garcia, McAllen, Charles M. Silverman, John D. White, Winstead, Secrest & Minick, Houston, for appellees.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and YAÑEZ, JJ.

## OPINION

YANEZ, Justice.

This is an appeal from a summary judgment that 801 Nolana, Inc., appellant, is liable for indebtedness to the RTC Mortgage Trust 1994–S6, appellee, and that it take nothing by its counterclaim for declaratory relief, specific performance, and usury. By two points of error, appellant challenges the basis for the summary judgment against it and the denial of its motion for partial summary judgment on its counterclaim. We reverse and remand, in part, and affirm, in part.

## FACTUAL AND PROCEDURAL BACKGROUND

801 Nolana, Inc., f/k/a Falcon Group Development Company ("801 Nolana"), is a Texas corporation which was organized for the purpose of acquiring an office building at the street address 801 Nolana in McAllen, Texas, and collecting rents from tenants. On May 29, 1987, for purposes of acquiring the property, 801 Nolana executed and delivered to Valley Federal Savings and Loan Association ("Valley Federal") in McAllen, the owner of the building at the time, a promissory note in the amount of $2,398,000, payable to Valley Federal and dated May 29, 1987. On this same day, 801 Nolana executed both a deed of trust granting Valley Federal a lien on the property at 801 Nolana and an assignment of leases and rents from the property to Valley Federal. On April 15, 1988, 801 Nolana executed and delivered a second promissory note payable to Valley Federal, this one in the amount of $290,000 and dated April 15, 1988. On this same date, 801 Nolana also executed both a deed of trust granting Valley Federal a second lien on the property at 801 Nolana and an assignment of rents to Valley Federal.

In late May or June of 1993, during the construction phase of the property, Valley Federal failed and thus was unable to lend any more money to 801 Nolana, leaving 801 Nolana without sufficient funds for build-out. This resulted in a negative cash-flow and, in turn, led 801 Nolana to default on the two notes. On September 30, 1994, the Resolution Trust Corporation, acting as conservator and receiver for Valley Federal, assigned the deeds of trust and assignments of rent executed by 801 Nolana pursuant to the two promissory notes to RTC Mortgage Trust 1994–S6 ("RTC Mortgage"), a Delaware business trust. On the same day, RTC Mortgage collaterally assigned both promissory notes and deeds of trust to State Street Bank and Trust Company as bond trustee. On November 3, 1993, Assets Recovery Fund, Inc. ("ARF"), attorney-in-fact for RTC Mortgage, notified 801 Nolana that the loans were in default and that RTC Mortgage intended to accelerate the notes unless they were paid by noon, November 14, 1993. On November 14, 1993, ARF accelerated the notes and demanded that 801 Nolana immediately turn over all rents, revenues, profits, and other monies arising out of the operation of the property.

On November 29, 1994, RTC Mortgage filed an original petition and application for a temporary restraining order requesting injunctive relief, claiming it was lawfully entitled to the rents, revenues, and profits from

801 Nolana, and that 801 Nolana's possession of these items would cause it imminent harm. RTC Mortgage also requested appointment of a temporary receiver to oversee and manage the property. The temporary restraining order was granted on that same day. On January 23, 1995, asserting the same grounds, RTC Mortgage filed an amended original petition, an application for temporary restraining order and for both a temporary and permanent injunction and an application for appointment of a temporary receiver.

By its answer and counterclaim, filed February 21, 1995, 801 Nolana claimed the existence of an exonerating agreement between the parties and/or ARF's predecessors-in-interest, by which ARF became obligated to enter into a new loan agreement for approximately $1.7 million. 801 Nolana maintained that it had met the conditions placed on it under the agreement. It thus counterclaimed for a declaration that the debt and lien under the two notes it executed for the purchase of the 801 Nolana office building had been fully paid and discharged, respectively, and for specific performance by RTC Mortgage on the agreement entered by its predecessors calling for purchase of the property at $1.7 million. 801 Nolana also sought a temporary injunction to prevent foreclosure on the property. On February 21, 1995, the court also issued a temporary restraining order by agreement of 801 Nolana and RTC Mortgage Trust. Among the stipulations of this agreement, 801 Nolana was to refrain from dissipating, hiding, or commingling the rents, revenues, profits, or other monies received from the property, to hold and account for all the rents, revenues, and other monies received, to pay from these monies various operating and maintenance expenses, and to tender the remainder into an interest-bearing joint account at Texas Commerce Bank—McAllen in the name of both 801 Nolana and RTC Mortgage.

On March 2, 1995, 801 Nolana filed a motion for summary judgment on its counterclaim. 801 Nolana argued that the assignments of rent executed in conjunction with the two notes constituted *pro tanto* repayment of the debt, that RTC Mortgage and its predecessors-in-interest freely elected to apply these payments to other matters, and that at all times following maturity of the debt 801 Nolana acted at the direction of RTC Mortgage, in terms of the handling of rents, revenues, and profits. On March 2, 1995, 801 Nolana also filed an amended counterclaim, adding usury to its list of causes of action. On March 7, 1995, the trial court granted a temporary restraining order against RTC Mortgage. On March 10, 1995, 801 Nolana filed an amended motion for partial summary judgment on its counterclaim.

On March 23, 1995, RTC Mortgage filed a motion for summary judgment and response to 801 Nolana's amended motion for partial summary judgment on its counterclaim. RTC Mortgage based its motion on three grounds: (1) that 801 Nolana's conduct indicated the assignment of rents was a mere collateral assignment rather than an absolute transfer of title; (2) by its face, the assignment of rents was a collateral assignment; and (3) even if the assignment were an absolute transfer, the debt owed to RTC Mortgage nevertheless had not been discharged. By a partial summary judgment order issued on March 31, 1995, the trial court granted RTC Mortgage's motion for summary judgment and denied 801 Nolana's motion for partial summary judgment, adjudging 801 Nolana liable for the debt created by both promissory notes and finding that the assignments of rent were pledges of collateral. The court ordered that all funds in the joint account created by the agreed temporary restraining order be delivered to RTC Mortgage. The court also ordered that 801 Nolana take nothing against RTC Mortgage by either its request for declaratory relief or its usury claim.

## THE NATURE OF THE ASSIGNMENTS OF RENTS

By its first point of error, 801 Nolana claims the trial court erred in granting summary judgment for RTC Mortgage. 801 Nolana argues that the documents creating the assignments of rents on the two promissory notes were absolute transfers of title, not security pledges. As such, it argues that RTC Mortgage or its predecessor-in-interest

had title to the rents, and that upon notice of default, the rents held by 801 Nolana were to be credited *pro tanto* to its indebtedness on the notes. In response, RTC Mortgage argues that the assignment of rents was not an absolute transfer of title, and that even if it were, 801 Nolana's conduct was inconsistent with such a transfer.

In reviewing a summary judgment appeal, the central inquiry is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of a material fact as to one or more of the essential elements of the plaintiff's cause of action. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). The burden of proof is on the movant, and all doubts regarding material facts are resolved against the movant. *Nixon,* 690 S.W.2d at 548–49; *Roskey v. Tex. Health Facilities Comm'n,* 639 S.W.2d 302, 303 (Tex.1982). When reviewing a summary judgment, we should consider all summary judgment grounds the trial court ruled on and preserved for review by the movant that are necessary for final disposition of the appeal, and we may consider other preserved grounds not ruled on in the interest of judicial economy. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996) (reversing a court of appeals because it failed to analyze all summary judgment evidence available). Summary judgment evidence may include affidavits from competent affiants based on personal knowledge and setting forth facts that would be admissible in evidence. TEX.R. CIV. P. 166a(f). Legal conclusions in affidavits have no probative force. *Life Ins. Co. v. Gar–Dal, Inc.,* 570 S.W.2d 378, 381–82 (Tex.1978).

Under Texas law, an assignment of rents may be considered either a security pledge or an absolute transfer of title to the rents. *Taylor v. Brennan,* 621 S.W.2d 592, 593–94 (Tex.1981). An assignment of rents classified as a security pledge is bound by the common law rule that the assignment does not become operative until the mortgagee obtains possession of the property, impounds the rents, secures the appointment of a receiver, or takes some similar affirmative action. *Id.* at 594. An "absolute" assignment, however, operates to transfer the right to rents automatically upon the happening of a specified condition, such as default.[1] *Id.* It is a *pro tanto* payment of the obligation. *Id.* An absolute transfer of rents, for example, may confer immediate title to the lender with the lender's enjoyment of the rents deferred until the occurrence of some specified condition, *e.g.,* default on the loan. *See FDIC v. International Property Management,* 929 F.2d 1033, 1035 (5th Cir.1991) (applying Texas law to an assignment of rents).

Under *Taylor,* where an assignment of rents has been issued contemporaneously with a deed of trust, the question of whether the assignment clause operates as a security pledge or an absolute assignment is determined by the intent of the parties, ascertained by reading these documents together. 621 S.W.2d at 594. Where an assignment has been given as "further security," this is a strong indication it is intended as a mere security pledge. *Id.* A requirement of some affirmative action by the mortgagee in order to secure the rents also is an indication that the assignment is a security pledge. *Id.* The Fifth Circuit has found absolute transfer of title in an agreement that did not use the words "security" or "pledge," that stated it was "intended to be absolute, unconditional and presently effective," and did not require affirmative action on the part of the mortgagee in order to secure the rents. *International Property Management,* 929 F.2d at 1038. Supporting the trial court's summary judgment order is an express conclusion of law that the assignments of rent at issue in this case reflect the intention of the parties to create "a pledge and not an absolute assignment of rents." This being the only ground

1. In *Taylor,* the Supreme Court observed that public policy considerations generally make courts reluctant to construe assignment of rentals clauses as absolute transfers of title. 621 S.W.2d at 594. Mortgagors, to illustrate, expect the flexibility of applying rents to their own businesses. Under an absolute assignment, more-

over, there also is no assurance that a mortgagee will collect rents and apply them to the debts. Absolute assignments, nevertheless, are legal. *Id.* The policy concerns identified by the Supreme Court in *Taylor,* however, appear to be at the root of the dissenting opinion in the instant case.

for the summary judgment specified in the order, we may affirm the judgment only if this conclusion is not erroneous and, in the interest of judicial economy, if no other preserved grounds not ruled on compel us to affirm. *Cincinnati Life Ins. Co.*, 927 S.W.2d at 626. Essentially the same matters of fact raised by RTC Mortgage but not ruled on by the trial court, however, are raised by 801 Nolana's second point of error, which challenges the trial court's denial of its motion for summary judgment. In consideration of our ultimate disposition of this appeal, we will address these issues in our discussion of the second point of error.

The deed of trust and assignment of rents on the May 29, 1987 note were executed contemporaneously and offered as summary judgment evidence. In order to determine the nature of this particular assignment of rents, therefore, they must be read together. In so doing, we find strong agreement between the documents indicating that an absolute transfer of title was effected by the parties rather than a security pledge.

At Article IV, Section 4.2 of the deed of trust, the grantor assigns to the holder all rental payable under any leases on the property. By this same section, the assignment of rent "is intended to be absolute, unconditional and presently effective." The section states, "It shall never be necessary for Holder to institute legal proceedings of any kind whatsoever to enforce the provisions of this Section 4.2." The assignment of rents document states that it was made "for the purpose of securing the repayment of [the May 29, 1987 note]," and that, "effective immediately," it conveys to the assignee "all rents, royalties and other consideration payable [to the assignor]." The assignment agreement also indicates that the assignment is "intended to be absolute, unconditional and presently effective." Section 4.2(a) of the deed of trust stipulates that the grantor covenants to hold all rental from the leases in trust for the use and benefit of the holder. The assignment document stipulates that until notice of default from assignee, rents may be paid directly to the assignor, who shall hold them in trust for the use and benefit of the assignee. Section 4.2(c) of the deed of trust stipu-

lates that rental received by the holder shall be applied first to the expenses involved in collecting rents and then, in accordance with the requirements of section 3.9 of the deed, to expenses involved in advertising, selling, and conveying the mortgaged property, next to accrued interest on the secured debt, then to the principal on the matured portion of the secured debt, then to prepayment of the unmatured portion of the debt, if any, and finally, to the balance remaining, if any, "after the full and final payment and performance of the Secured Indebtedness." The assignment agreement stipulates that in the event of default, assignor appoints assignee as its attorney "with full power of substitution" and with power in its own name to "demand, collect, receive and give complete acquittance for any and all rents," and that rents may be used for payment of the secured indebtedness. Section 4.2(d) of the deed of trust provides that the holder may at any time release to the grantor the rents it has received, and section 4.2(e) stipulates that the holder shall not be liable for its failure to collect or exercise diligence in the collection of rents, and is accountable only for rents it actually receives.

At all junctures relevant to the assignment of rents, moreover, the deed of trust and assignment of rents document executed pursuant to the April 15, 1988, promissory note follow the same language and structure of the documents as the assignment of rent pursuant to the promissory note executed on May 29, 1987, but for the differences in dates of execution. The assignments of rents created on April 15, 1988, and on May 29, 1987, in other words, used comparable phraseology.

██ Based on the specified rights and obligations in these documents, we find that both assignments of rent at issue here were intended as absolute transfers of title. Irrespective of its characterization as "security" or "absolute assignment," an assignment of rent typically is executed pursuant to a lender's interest in being repaid. *See International Property Management*, 929 F.2d at 1035–36; *see also In re Ventura–Louise Properties*, 490 F.2d 1141, 1143–44 (9th Cir. 1974) (recognizing the repayment interest

that may underlie such agreements and cited by the Texas Supreme Court in *Taylor,* 621 S.W.2d at 594, for illustration of the purpose of absolute transfers of title). Hence, we cannot accept appellee's view that because the assignment of rents agreement was part of the larger secured debt agreement conclusively makes this rentals assignment a mere security pledge. The terms of the agreement and deed of trust, read together, belie this characterization. We hold that the agreements and deeds of trust here read together indicate that the parties intended an absolute transfer of title to the rents, and that the trial court erred in concluding that the assignments of rents were security pledges. We sustain point of error one.

### 801 NOLANA'S COUNTERCLAIMS

▪ 801 Nolana also complains of the denial of its motion for summary judgment on its counterclaim. When both parties to litigation file motions for summary judgment and one is granted while the other denied, the denial may be considered by the reviewing court if the appealing party complains of both the granting of the opponent's motion and the denial of his own motion. *Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400 (1958). 801 Nolana having complained of both rulings, we may consider its complaint on the denial of its motion for summary judgment. In so doing, we also will reach issues raised by RTC Mortgage in its motion for summary judgment but not ruled on by the trial court.

▪ By its second point of error, 801 Nolana argues that because the assignment of rents was an absolute transfer of title, the transfer effected *pro tanto* payment of the underlying obligation on the promissory notes. It thus argues it has paid the notes in full and is entitled to declaratory relief. It also claims it is owed specific performance from RTC Mortgage as to a settlement agreement for purchase of the property for which the two promissory notes were executed. 801 Nolana argues, in addition, that RTC Mortgage's demands at this point constitute usury.

While we have found that the assignments of rent were to be absolute transfers of title,

it is not clear that, *ipso facto,* 801 Nolana is entitled to summary judgment. The terms of the assignment of rents agreements stipulate that rental received by 801 Nolana should be applied to the expenses of collecting the rents, then to the advertising, selling, and conveying of the property, then to the interest on the debt, and then to the principal, but this is not evidence that the 801 Nolana actually applied the rental received accordingly. RTC Mortgage's summary judgment evidence includes an affidavit from Zane Hudson, an asset manager for ARF. Hudson's responsibilities included monitoring the status and payments on amounts due on the two promissory notes. He attested that following notice of default on the notes and request for the rents, appellant refused to turn over any rents to appellee. By the record from the hearing on the temporary injunction, which was offered as summary judgment evidence, John Wester, who is president of 801 Nolana and responsible for the rents it receives, admitted that rents never were paid directly to RTC Mortgage, that he never delivered rents to RTC Mortgage, that no trust account was set up in which to hold the rents, and that no rents were held in escrow for RTC Mortgage. Wester stated, nevertheless, that a settlement between MD & Associates and 801 Nolana modified the terms of the loan agreement, and 801 Nolana's summary judgment evidence does include copies of several canceled checks from 801 Nolana paid to MD & Associates in the amount of $7,000 each, dating back to July of 1993. The summary judgment also evidence includes an affidavit from Earl Massie, a vice president for Valley Federal from 1980 to 1990 who was responsible, along with RTC Mortgage, for management of the loan to 801 Nolana. He attested that to the best of his knowledge there were no written modifications to the notes or security documents. Further, the settlement negotiations agreement, which was signed by 801 Nolana in August of 1992, stipulates that no modifications to the May 27, 1989 loan have been made unless they are in writing. We find no written settlement agreement in the summary judgment evidence. We therefore hold that because genuine issues of material fact exist as to whether 801 Nolana

actually applied or delivered the rents per the rental assignment agreements, the trial court did not err in denying 801 Nolana's motion for summary judgment. Point of error two is overruled.

Accordingly, we reverse summary judgment granted in favor of RTC Mortgage and remand for proceedings consistent with this opinion. The trial court's denial of summary judgment favoring 801 Nolana is affirmed.

SEERDEN, Chief Justice, dissenting.

Accepting for purpose of discussion, the majority's position that the present assignment amounted to an absolute transfer of rents, we are still left with the question of how that assignment affected a payment of the underlying debt. I conclude that the debt remains outstanding and would affirm the summary judgment in favor of the RTC.

From the date of its default, 801 Nolana has collected over two million dollars in rental payments which would fall within the terms of the assignment. However, rather than turning those payments over to the RTC in payment of the debt, 801 Nolana contends that the creditor had agreed to allow those rents to be used to maintain the rental property. Nevertheless, because the creditor had an immediate right to those rental payments, 801 Nolana asserts that the rental payments should be credited against its debt.

An absolute assignment of rental operates to transfer the right to rentals automatically upon the happening of a specified condition, such as default. *Taylor v. Brennan*, 621 S.W.2d 592, 594 (Tex.1981). However, I would not equate the mere right to payment of such rentals with actual payment of the underlying debt, until the creditor has actually received such payments. Even when the creditor agrees to allow his debtor to retain assigned rental payments, I would view this in terms of a forbearance of the right to rental payments, rather than a payment of the underlying debt. Forbearance in collection of the underlying debt does not cancel the debt, but merely extends the debtor's time to repay it. *See Meyer v. Mack Sales, Inc.*, 645 S.W.2d 493, 495 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Likewise, forbearance in collecting the assigned rents from the debtor should not cancel the debt, but merely postpone or forgo that particular means of satisfying the debt. By forgoing its right to immediate turnover of the rents under the assignment, the creditor may not reasonably be understood to have also abandoned its right to the amount of the underlying loan which remains unpaid. Such an interpretation would force the lender to either demand absolute and immediate turnover of any rental payments subject to such an assignment or risk having the underlying debt abruptly canceled.

In the present case, I would hold that the creditor's consent to allow 801 Nolana to retain the rental payments in order to maintain the rental property amounted to only a forbearance of the creditor's right to immediate turnover of such rents under the terms of the assignment, and that the underlying debt remained unpaid and subject to the present action against 801 Nolana.

Accordingly, I would affirm the summary judgment.