**THE CADLE COMPANY, Appellant,**

v.

**COLLIN CREEK PHASE II ASSOCIATES, LTD., Collin Creek Phase II Company, Ltd., William R. Cooper, Steven A. Means, and Clifton C. Story, Appellees.**

No. 06–98–00172–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 27, 1999.

Decided Aug. 10, 1999.

---

Randall K. Lindley, Beverly Ann Whitley, Bell, Nunnally & Martin, PLLC, Dallas, for appellant.

Van Jackson Hooker, Stutzman & Bromberg, Dallas, David A. Klingler, Dallas, for appellees.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

The Cadle Company appeals from an adverse summary judgment in its suit against Collin Creek Phase II Associates, Ltd., Collin Creek Phase II Company, Ltd., William R. Cooper, Steven A. Means, and Clifton C. Story.

Cadle owned two notes signed by Collin Creek Phase II Associates ("Collin Creek"), and foreclosed on the property securing the notes. Cadle also sued to recover the rents collected from the property from the time of default to the time of foreclosure. Collin Creek and the other defendants [1] moved for summary judgment, contending that 1) the nonrecourse provisions in the notes exempted them from liability for the rents; 2) the rents

collected after the default were not absolutely assigned to the holder of the notes; and 3) the statute of limitations had run on Cadle's claim. We affirm the judgment of the trial court.

The facts are uncontested. On November 2, 1984, Collin Creek executed two nonrecourse promissory notes payable to MBank, Dallas. Collin Creek also executed two documents entitled Deed of Trust, Security Agreement and Assignment of Rents ("deeds of trust"), creating a first and second lien on certain real property, personal property, and fixtures located in Collin County. MBank and Collin Creek later entered into a loan modification agreement reducing the principal amount of one of the notes through the execution of a new nonrecourse promissory note. Later, MBank and Collin Creek entered into a modification, renewal, and extension agreement extending the maturity date of the notes to December 1, 1990.

Collin Creek Company, Ltd. was the general partner of Collin Creek. Originally, Means, Story, and Cooper were general partners in the Collin Creek Company. Means, Story, and Cooper all withdrew from the partnership by December 31, 1992. In December of 1994, the Bankruptcy Court discharged Story from all debts.

Cadle purchased the notes from Bank One on May 20, 1994. Bank One had acquired the notes from the Federal Deposit Insurance Corporation as receiver of the failed MBank. On June 27, 1994, Cadle filed this action in the trial court, suing only Collin Creek for rents collected after December 1, 1990, the default date. Cadle also sought and obtained a writ of sequestration which authorized the sheriff or constable to take possession of the property and to collect and hold all rents from the property. Before the writ of sequestration was issued, no owner of the notes had ever taken possession of the property, impounded the rents, secured the appointment of a receiver, or taken any similar action. Soon after the writ of sequestration was

---

1. All references to Collin Creek will also include the other defendants in the lawsuit.

issued, Cadle foreclosed on the property. Collin Creek Phase II Company, Cooper, Means, and Story were added as defendants to the lawsuit on October 21, 1994.

Collin Creek answered and filed a motion for summary judgment, contending that the nonrecourse provision in the notes precluded any personal liability of Collin Creek's partners or its partner's partners. Additionally, the motion for summary judgment contended that the assignment of rents clause created a mere security interest in the rents rather than an absolute assignment. Finally, Collin Creek contended that Cadle's suit was barred by the statute of limitations. After a hearing, the trial court granted the motion and rendered final judgment without specifying the grounds for its ruling.

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, the summary judgment must be affirmed on appeal if any of the theories advanced in the motion is meritorious. *Weiner v. Wasson,* 900 S.W.2d 316, 317 n. 2 (Tex. 1995); *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989). Cadle attacks each ground raised in Collin Creek's motion for summary judgment.

■ We review a summary judgment de novo. In summary judgment cases, the question on appeal is whether the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Shivers v. Texaco Exploration and Prod., Inc.,* 965 S.W.2d 727, 731 (Tex.App.-Texarkana 1998, pet. denied). The movant has the burden in a summary judgment proceeding, and the court must resolve against the movant all doubts as to the existence of a genuine issue of fact. *Roskey v. Texas Health Facilities Comm'n,* 639 S.W.2d 302, 303 (Tex.1982). A defendant moving for summary judgment must disprove at least one element of each theory pleaded by the plaintiff, or conclusively prove by summary judgment evidence each essential element of an affirmative defense. *Shivers v. Texaco Exploration and Prod., Inc.,* 965 S.W.2d at 731. A summary judgment can be granted for a movant even if the movant fails to produce summary judgment evidence in support of the motion, if the motion is based on a point of law with undisputed facts. *Segrest v. Segrest,* 649 S.W.2d 610, 611 (Tex.1983). If the movant does not meet its burden of proof, there is no burden on the nonmovant. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). But if the movant establishes a right to summary judgment, the burden shifts to the nonmovant. *Stevens v. State Farm Fire and Cas. Co.,* 929 S.W.2d 665, 669 (Tex.App.-Texarkana 1996, writ denied). The nonmovant must then respond to the summary judgment motion and present to the trial court summary judgment evidence raising a fact issue that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d at 678.

■ We will first address Cadle's second point of error because it is dispositive of the case. In its motion for summary judgment, Collin Creek contended that the assignments of rents under the deeds of trust were not operative until Cadle obtained the writ of sequestration. Cadle contends on appeal that the trial court erred in granting summary judgment because a genuine issue of material fact exists as to whether the parties intended the assignment of rents clause as an absolute assignment and not a security interest.

■ Texas follows the lien theory of mortgages. *Taylor v. Brennan,* 621 S.W.2d 592, 593 (Tex.1981). Under this theory the mortgagee is not the owner of the property and is not entitled to its possession, rentals, or profits. *Id.* For this reason, it has become a common practice to include in the deed of trust, or in a separate instrument, provisions assigning to the mortgagee the mortgagor's interest in all rents falling due after the date of

default as additional security for payment of the mortgage. *See id.*

■ Under Texas law, an assignment of rents may be considered either a security pledge or an absolute transfer of title to the rents. *See id.* at 594; *801 Nolana, Inc. v. RTC Mortgage Trust 1994–S6*, 944 S.W.2d 751, 754–55 (Tex.App.-Corpus Christi 1997, writ denied). An assignment of rents classified as a security pledge is bound by the common law rule that the assignment does not become operative until the mortgagee obtains possession of the property, impounds the rents, secures the appointment of a receiver, or takes some similar affirmative action. *801 Nolana, Inc. v. RTC Mortgage Trust 1994–S6*, 944 S.W.2d at 754. An "absolute" assignment, however, operates to transfer the right to rents automatically upon the happening of a specified condition, such as default. *Id.* An absolute transfer of rents passes title to the rents. *Taylor v. Brennan*, 621 S.W.2d at 594.

■ Where an assignment of rents has been issued contemporaneously with a deed of trust, the question of whether the assignment clause operates as a security pledge or an absolute assignment is determined by the intent of the parties, ascertained by reading the documents together. *801 Nolana, Inc. v. RTC Mortgage Trust 1994–S6*, 944 S.W.2d at 754. Courts are reluctant to construe an assignment of rents clause as an absolute assignment because public policy disfavors such assignments. *Oryx Energy Co. v. Union Nat'l Bank of Texas*, 895 S.W.2d 409, 414–15 (Tex.App.-San Antonio 1995, writ denied); *see Taylor v. Brennan*, 621 S.W.2d at 594. When an assignment of rents states that it is given as "further security," there is a strong indication that it is intended as a mere security pledge. *Taylor v. Brennan*, 621 S.W.2d at 594. A requirement that the mortgagee take some affirmative action in order to secure the rents is also an indication that the assignment is a security pledge rather than an absolute assignment. *801 Nolana, Inc. v. RTC*

*Mortgage Trust 1994–S6*, 944 S.W.2d at 754.

The relevant portions of the assignment of rents provision involved here read as follows:

H. ASSIGNMENT OF RENTS. Grantor [Collin Creek] does hereby absolutely and unconditionally assign, transfer and convey to Beneficiary, as well as to Trustee on Beneficiary's behalf, all Rents under the following provisions:

1. Grantor reserves the right until the occurrence of an Event of Default under this Deed of Trust, to collect such Rents and apply the Rents so collected in the order set forth in Paragraph 7 of Section E hereof.

2. Upon the occurrence of an Event of Default Beneficiary or Trustee on Beneficiary's behalf, may at any time, and without notice, either in person, by agent, or by receiver to be appointed by a court, enter and take possession of the Property or any part thereof, and in its own name, sue for or otherwise collect such Rents. Grantor hereby agrees with Beneficiary that the other parties under the Leases may, upon notice from Trustee or Beneficiary of the occurrence of an Event of Default, thereafter pay direct to Beneficiary the Rents due and to become due under the Leases, and attorn to all other obligations thereunder direct to Beneficiary, or Trustee on Beneficiary's behalf, without any obligation on their part to determine whether an Event of Default does in fact exist or has in fact occurred. All Rents collected by Beneficiary, or Trustee acting on Beneficiary's behalf, shall be applied as provided for in Paragraph 7 of Section E above; provided, however, that if the costs, expenses and attorneys' fees shall exceed the amount of Rents collected, the excess shall be added to the Note, shall bear interest as provided in Paragraph 5 of Section J below and shall be immediately due and payable. The

entering upon and taking possession of the Property, the collection of Rents, and the application thereof as aforesaid shall not cure or waive any Event of Default or notice of default, if any, hereunder nor invalidate any act done pursuant to such notice, except to the extent any such default is fully cured. Failure or discontinuance of Beneficiary, or Trustee on Beneficiary's behalf, at any time or from time to time, to collect said Rents shall not in any manner impair the subsequent enforcement by Beneficiary, or Trustee on Beneficiary's behalf, of the right, power and authority herein conferred upon it. Nothing contained herein, nor the exercise of any right, power or authority herein granted to Beneficiary, or Trustee on Beneficiary's behalf, shall be or be construed to be, an affirmation by it of any tenancy, lease, or option, nor an assumption of liability under nor the subordination of the lien or charge of this Deed of Trust, to any such tenancy, lease, or option.

Cadle argues that the assignment of rents clause above is an absolute assignment. Specifically, Cadle points out that the first paragraph of the assignment clause states that Collin Creek absolutely and unconditionally assigns, transfers, and conveys all rents. Cadle also contends that the sentence stating that "[f]ailure . . . to collect said Rents shall not in any manner impair the subsequent enforcement . . . of the right, power and authority herein conferred upon [Cadle]" indicates the assignment is absolute.

■ When construing written contracts, our duty is to ascertain the true intentions of the parties as expressed in the instruments. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). We must examine the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none of the provisions is rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 158 (1951); *Oryx Energy Co. v. Union Nat'l Bank of Texas,*

895 S.W.2d at 413. All of the provisions must be considered with reference to the whole instrument, and no single provision taken alone will be given controlling effect. *Coker v. Coker,* 650 S.W.2d at 393.

■ If a written contract may be given a certain definite legal meaning, the contract is not ambiguous and its interpretation is a question of law for the court. *Coker v. Coker,* 650 S.W.2d at 393. A contract is ambiguous when its meaning is uncertain or it is reasonably susceptible to more than one meaning. *Skelly Oil Co. v. Archer,* 163 Tex. 336, 356 S.W.2d 774, 778 (1961); *Oryx Energy Co. v. Union Nat'l Bank of Texas,* 895 S.W.2d at 413.

Cadle argues that the word "absolute" as used in the assignment is controlling. We disagree. We consider the document as a whole, and after doing so, we conclude that the assignment is a pledge of security in the rents. The assignment provides that Collin Creek absolutely assigns the rents *"under the following provisions"* (emphasis added). The only provision that discusses the right Cadle had to any of the rents is clause H.2. That clause permits the beneficiary or trustee to enter on the property, take possession, and begin collection of the rents in the event of a default. The assignment clause does not contain the usual provision found in absolute assignments, which is that the assignment is intended to be "presently and immediately effective," nor does it contain a provision that Cadle is not required to institute legal proceedings to enforce the assignment provisions. *See Federal Deposit Ins. Corp. v. International Property Management, Inc.,* 929 F.2d 1033, 1037–38 (5th Cir.1991). Although the assignment clause does not *require* that Cadle enter the property to collect rents, as is typically provided in security pledge assignment clauses, it does provide that Cadle *may* do so, and the deeds of trust provide no alternative method for collecting the rents. Cadle may enter the premises and begin to collect rents in the event of default. Entry is the only authorized method for col-

lecting the rents on default. We find the assignment clause is a pledge of security rather than an absolute assignment.

Additionally, the portion of the assignment stating that Cadle's failure to collect the rents shall not in any manner impair the subsequent enforcement of the right does not indicate an absolute assignment, but rather supports the construction of the assignment clause as a security agreement. Cadle's failure to collect rents after default does not impair its ability to come on the property at a later date and begin collecting rents as collateral for the underlying indebtedness.

Because we find that the assignment clause is unambiguously a pledge of security, Cadle is only entitled to the rents it collected after it took possession of the property. *See Taylor v. Brennan,* 621 S.W.2d at 593. Collin Creek is not liable to Cadle for rents collected from the date of default until the date of the writ of sequestration. Because we find one of Collin Creek's theories advanced on summary judgment meritorious, we affirm the trial court's judgment. It is not necessary for us to discuss the other contentions.