OPINION HEADING PER CUR 




 NO. 12-03-00036-CV



IN THE COURT OF APPEALS


 

TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS



EMPLOYERS REINSURANCE 

CORPORATION,
§
 APPEAL FROM THE 241ST

APPELLANT



V.
§
 JUDICIAL DISTRICT COURT OF


THRELKELD & COMPANY INSURANCE

AGENCY D/B/A THRELKELD &

COMPANY INSURANCE D/B/A
§
 SMITH COUNTY, TEXAS

THRELKELD FINANCIAL GROUP,

APPELLEE





OPINION


 Employers Reinsurance Corporation ("Employers") appeals a summary judgment granted
in favor of its insured, Threlkeld & Company Insurance Agency ("TCI"). The sole issue on appeal
is whether the act of selling a viatical settlement constitutes the "business of insurance," thereby
invoking coverage under TCI's professional liability policy. We reverse and remand.


Background


 From approximately July 1, 1998 through October 1999, TCI served as a "marketing
licensee" for First Financial Security of Texas ("First Financial"), a viatical settlement broker. A
viatical settlement is defined as 


 an agreement that is solicited, negotiated, offered, entered into, delivered, or issued for delivery in this
state under which a person pays anything of value that is:


 (A) less than the expected death benefit of a policy insuring the life of an individual who has a
catastrophic or life-threatening illness or condition; and


 (B) paid in return for the policy owner's or certificate holder's assignment, transfer, bequest,
devise, or sale of the death benefit under or ownership of the policy.



Tex. Ins. Code Ann. § 1111.001(3) (Vernon Supp. 2003). The viatical settlement process works
in the following fashion: an investor acquires an interest in a life insurance policy of a terminally
ill person - typically an AIDS victim - at a discount of twenty to forty percent, depending on the
insured's life expectancy. Securities and Exch. Comm'n v. Life Partners, Inc., 87 F.3d 536, 537
(D.C. Cir. 1996). When the insured dies, the investor receives the benefit of the insurance. Id. The
investor's profit is the difference between the discounted purchase price paid to the insured and the
death benefits collected from the insurer, less transaction costs, premiums paid, and other
administrative expenses. Id.

 Here, First Financial procured various viatical settlements from terminally ill people who
owned life insurance. It began this process by making contact with the terminally ill person who
owned the life insurance policy. After negotiating the purchase price of the life insurance with the
terminally ill person, First Financial prepared the necessary documentation to establish the viatical
settlement. Investors then responded to a series of solicitations, prepared by TCI, for investing in
the viatical settlements to take advantage of the advertised fourteen to eighteen percent rate of return
on the investment. Throughout the process, TCI was acting as an agent for First Financial in order
to market the investments. 

 After these investors had paid for their share of the viatical settlement, it was soon discovered
that the investment was worthless because the life insurance company who initially issued the
policies cancelled them after it ascertained that the policies were fraudulently obtained. First
Financial, although it had contracted with these investors to supply a replacement viatical settlement
of the same value if such an event as this occurred, failed to make the loss good. These investors
then sued TCI, asserting claims for negligence, negligence per se, violations of the Texas Deceptive
Trade Practices Act, fraud, fraud in the inducement, fraudulent concealment, joint enterprise, agency,
breach of contract, and violations of the Texas Insurance Code. 

 TCI called upon Employers, the carrier of its professional liability insurance, to defend it
against these claims. Employers defended TCI under a reservation of rights and settled some of the
claims, subject to a right of reimbursement from TCI. TCI then filed suit against Employers, seeking
a declaratory judgment that the claims by the investors were covered under its professional liability
policy issued by Employers. The relevant policy section reads as follows:



Section I



 Coverage. The Corporation does hereby agree to pay on behalf of the Insured
such loss in excess of the applicable deductible stated and within the limit of
liability specified in the Declarations sustained by the Insured by reason of liability
imposed by law for damages caused by:



 any negligent act, error or omission of the Insured or any person for 


 whose acts the Insured is legally liable or,



 any claim for libel or slander or invasion of privacy against the Insured,


 

 arising out of the conduct of the business of the Insured in rendering services for
others as a general insurance agent, insurance agent or insurance broker, and
including activities as an insurance consultant or notary public and any advertising
activities, as respects claims first made against the Insured during the policy period.



 The trial court granted a summary judgment for TCI, declaring that the coverage clause
"included coverage for claims arising from viatical settlement agreements." Employers timely filed
this appeal. 

Is the Act of Selling a Viatical Settlement Considered

 the "Business of Insurance?"


 Employers presents one issue for our consideration: Does the act of selling a viatical
settlement constitute the "business of insurance" as contemplated in the professional liability policy
issued by Employers to TCI? 


Standard of Review

 Summary judgment is proper only when a movant establishes there is no genuine issue of
material fact and that the movant is entitled to judgment as a matter of law. Randall's Food Mkts.,
Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). In reviewing a summary judgment, we indulge
every reasonable inference in favor of the non-movant, assume all evidence favorable to the non-movant is true, and resolve any doubts in its favor. Id. Matters of statutory construction are
questions of law for the court to decide. Johnson v. City of Ft. Worth, 774 S.W.2d 653, 656 (Tex.
1989). When the controversy concerns the construction of an unambiguous written instrument, the
construction is a matter of law for the court. Sears, Roebuck and Co. v. Commercial Union Ins.
Corp., 982 S.W.2d 151, 154 (Tex. App.-Houston [1st Dist.] 1998, no writ). 


Analysis

 Insurance is a contract by which one party, for consideration, assumes particular risks on
behalf of another party and promises to pay him a certain or ascertainable sum of money on the
occurrence of a specified contingency. Stewart Title Guar. Co. v. Cheatham, 764 S.W.2d 315, 318-319 (Tex. App.-Texarkana 1988, writ denied). In other words, the buyer of an insurance policy 
forgoes current consumption in order to protect against future risk. See Life Partners, Inc., 87 F.3d
at 541-42. Another essential characteristic of insurance is risk-pooling. Id. 

 None of these characteristics which define insurance are present in the viatical settlement
agreement between First Financial and the individual investors. The terminally ill person, who was
the insured, did not forgo current consumption; in fact, he opted for current consumption. This is
diametrically opposed to the concept of insurance because in a viatical settlement, the insured
immediately receives the protection for which he initially contracted, albeit at a discounted amount. 
Furthermore, any risk involved when the policy was purchased was removed as a result of the
terminal illness and shortened life span. Finally, the individual investors did not risk-pool. There
is no evidence in the record that the individuals who invested in the viatical settlements pooled the
financial risk that the seller will live longer than expected. Id. Therefore, a viatical settlement is not
an insurance policy, and the business of selling fractional interests in insurance policies is no part
of the "business of insurance." Id.

 We can find no federal or state authority which holds or mandates that the selling of viatical
settlements constitutes "the business of insurance." However, TCI contends that its activities in
soliciting the individual investors in its capacity as an agent for First Financial constituted the
"business of insurance" as defined in the Texas Insurance Code. See Tex. Ins. Code Ann. § 101.051
(Vernon Supp. 2003). 

 First, TCI states that its solicitation of the individual investors to purchase the viatical
settlement agreement from First Financial was an act constituting the "business of insurance" in
Texas because it was "receiving and collecting consideration for insurance, including a premium." 
See Tex. Ins. Code Ann. § 101.051(b)(4)(A). We disagree. In this process, the life insurance
company sold the terminally ill person the life insurance policy and was therefore collecting or
receiving the consideration for that sale. First Financial stepped into the terminally ill person's shoes
to pay the premiums, and those premiums ultimately went to the life insurance company. First
Financial received a commission from the total amount invested by the investors as a result of
structuring the viatical settlement and did not receive premium payments from them. Therefore,
First Financial's payment of premiums to the life insurance company did not result in TCI's
"receiving or collecting consideration for insurance" as contemplated by the Texas Insurance Code.

 TCI also contends that it was "representing an insurer or assisting an insurer" when it
facilitated the delivery of the underlying insurance policy as part of the viatical settlement agreement
between First Financial and the individual investors. See Tex. Ins. Code Ann. § 101.051(b)(6)(D)
(Vernon Supp. 2003). Again, we disagree. The commissioner of insurance for the Texas
Department of Insurance herself described companies such as First Financial that offer viatical
settlement agreements as "non-insurance entities." Op. Tex. Att'y Gen. No. DM-314, 1995 WL
14127 (request for attorney general opinion characterizes such entities as "non-insurance entities"). 
The insurance commissioner's expertise in the insurance trade is unquestioned as the department she
directed was "created to regulate 'the business of insurance' in this state." See Liberty Mut. Ins. Co.
v. Garrison Contractors, Inc., 966 S.W.2d 482, 485 (Tex. 1998). The insurance commissioner does
not consider First Financial to be an insurer; therefore, we also decline TCI's invitation to treat First
Financial as an insurer. 

 TCI finally contends that it was engaged in the "business of insurance" in soliciting the
individual investors to purchase the viatical settlement agreement because that act was "recognized
as constituting insurance business within the meaning of statutes relating to insurance." See Tex.
Ins. Code Ann. § 101.051(b)(8) (Vernon Supp. 2003). TCI contends that the "business of
insurance" includes the sale and marketing of viatical settlements because the Texas Insurance Code
provides for the regulation of viatical settlements by the commissioner of insurance. See Tex. Ins.
Code art. 3.50-6A § 2(b) (Vernon 2001). Following the passage of article 3.50-6A in 1993, the
insurance commissioner for the State of Texas asked the office of the attorney general whether this
section allowed her to "license non-insurance entities that offer viatical settlement agreements." Op.
Tex. Att'y Gen. No. DM-314, 1995 WL 14127. The Texas Attorney General determined that article
3.50-6A of the Insurance Code was null and void because it violated the separation of powers
required by article II, section 1 of the Texas Constitution. Id. Furthermore, that provision was
repealed by the legislature in 2001. See Acts 2001, 77th Leg., R.S., ch. 1419, § 31(a). Based upon
this history of article 3.50-6A of the Insurance Code, there is nothing indicating that selling viatical
settlement agreements is part of the "business of insurance." 

 The reasoning underlying the argument that the selling of viatical settlements is the "business
of insurance" because it is defined and subject to regulations contained in the Texas Insurance Code
was also rejected by the Life Partners court, when it stated that 


 [t]o the extent that regulation of insurance companies is prompted by concern over their ability to pay
benefits when due, that concern is simply not applicable to investors in a viatical settlement because
the insured receives payment from the investors at the outset; thereafter the investor has no further
liability to the insured.



Life Partners, Inc., 87 F.3d at 541-42. We agree with this conclusion and hold that when TCI was
representing and assisting First Financial in the sale of viatical settlements to the individual
investors, it was not engaged in the "business of insurance" as defined by the Texas Insurance Code.


Coverage Clause


 TCI also contends that the coverage clause of its professional liability policy from Employers
is ambiguous; therefore, it should be construed in favor of coverage for the selling of the viatical
settlements. It is a fundamental rule of law that insurance policies are contracts and as such are
governed by rules of construction which are applicable to contracts generally. Barnett v. Aetna Life
Ins. Co., 723 S.W.2d 663, 665 (Tex. 1987). A contract is not ambiguous if it can be given a definite
or certain meaning as a matter of law. Columbia Gas Transmission. Corp. v. New Ulm Gas, Ltd.,
940 S.W.2d 587, 589 (Tex. 1996). A contract is ambiguous when its meaning is uncertain or it is
reasonably susceptible to more than one meaning. Cadle Co. v. Collin Creek Phase II Assocs., Ltd.,
998 S.W.2d 718, 723 (Tex. App.-Texarkana 1999, no pet.). TCI contends that it is unclear whether
viatical settlement agreements are part of the business of insurance and therefore parol evidence
should be considered in determining whether its actions on behalf of First Financial were covered
by its professional liability policy. We do not agree.

 For the reasons shown above, viatical settlement agreements are not part of the "business of
insurance." The coverage clause of TCI's policy with Employers describes all of TCI's covered
errors and omissions in the context of its insurance business "in rendering services for others as a
general insurance agent, insurance agent or insurance broker, and including activities as an insurance
consultant or notary public and any advertising activities." Performing acts on behalf of a non-insurance entity such as First Financial clearly does not trigger the coverage clause of this policy. 
Extrinsic evidence is inadmissible to contradict or vary the meaning of the unambiguous language
of the written contract. National Union Fire Ins. Co. v. CBI Industries, Inc., 907 S.W.2d 517, 521
(Tex. 1995). Therefore, we will consider only the coverage clause of TCI's insurance policy in
resolving the issue.

 We hold that TCI's act of selling a viatical settlement on behalf of First Financial did not
constitute the "business of insurance" nor was it an act contemplated by its professional liability
policy with Employers. Therefore, TCI was not entitled to summary judgment as a matter of law. 
Employers' sole issue is sustained.


Conclusion


 Having held that the trial court committed reversible error by declaring that the professional
liability policy issued by Employers to TCI included coverage for claims arising from the sale of
viatical settlement agreements, we reverse the summary judgment of the trial court and remand the
cause for proceedings in accordance with this opinion.

 JAMES T. WORTHEN 

 Chief Justice

Opinion delivered November 19, 2003.

Panel consisted of Worthen, C.J. and Griffith, J.




(PUBLISH)