ACCEPTED
13-14-00523-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
5/11/2015 2:12:36 PM
DORIAN RAMIREZ
CLERK

# No. 13-14-00523-CV

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
5/11/2015 2:12:36 PM
DORIAN E. RAMIREZ
Clerk

IN THE COURT OF APPEALS FOR THE
THIRTEENTH JUDICIAL DISTRICT OF TEXAS
CORPUS CHRISTI-EDINBURG

**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

5/11/15

*Dorian E. Ramirez*
CLERK

**David Robertson,**

**Appellant**

**v.**

**Oksana Robertson,**

**Appellee**

---

Appeal from the 148th District Court of Nueces County, Texas
*{Judge Guy Williams Presiding}*

---

## BRIEF OF APPELLEE OKSANA ROBERTSON

---

LAW OFFICE OF
AUDREY MULLERT VICKNAIR

Audrey Mullert Vicknair
State Bar No. 14650500
802 N. Carancahua, Ste. 1350
Corpus Christi, Texas  78401-0022
(361) 888-8413; (361) 887-6207 fax
avicknair@vicknairlaw.com

LAW OFFICE OF MICHAEL P. O'REILLY

Michael P. O'Reilly
State Bar No. 15301000
500 N. Shoreline, Ste. 604 N.
Corpus Christi, Texas 78401
(361) 887-7444; (361) 882-7463 fax
mike@oreillyfamilylaw.com

*Attorneys for Appellee Oksana Robertson*

i

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................... ii

INDEX OF AUTHORITIES.............................................................................v

STATEMENT OF THE CASE........................................................................ viii

STATEMENT REGARDING ORAL ARGUMENT ............................................ ix

ISSUES PRESENTED, RESTATED ..................................................................ix

1. The Texas Constitution, Family Code and the law of this State have long allowed spouses to enter into marital property agreements.  Only two defenses exist, and David Robertson asserted only one in the trial court: lack of voluntariness.   The burden is on the party refuting the validity of the agreement to prove his defense.  David Robertson failed to prove he did not execute the Partition Agreement voluntarily.   He then raises additional defenses for the first time in this Court; those have been waived.  The trial court properly granted summary judgment (germane to Points of Error 1 and 2).

2. Appellant's Point of Error 3 is waived.  His assertion that the judgment is overbroad is raised for the first time in this Court.  The argument is further belied by the record.

3. Appellant's Point of Error 4 is waived.  While it is stated as a complaint about the division of post-divorce income, the argument presented is different: Appellant argues Oksana is somehow improperly receiving spousal support.  No such arguments were raised in the trial court.  Further a valid marital property agreement exists and the trial court correctly enforced it, as stated in Issues Restated 1 and 2.

4. Appellant's Point of Error 5 regarding attorney's fees is raised for the first time in this Court and is waived.  In addition the arguments fail on the merits: the pleadings are more than sufficient, and Chapter 38 is trumped by the parties' contract, which requires attorney's fees to be paid to the party enforcing the Agreement.

STATEMENT OF FACTS ..................................................................................1

I.     Undisputed Facts: Oksana Robertson's Summary Judgment Evidence .........1

       A.  David and Oksana Robertson Executed a Proper Marital Property
           Agreement – a Partition Agreement -- During their Marriage ......................1

       B.  David Robertson's Deposition ...............................................................6

       C.  Attorney Robert W. Johnson, Jr.'s Affidavit ..........................................10

       D.  Justice of the Peace Duncan Neblett's Affidavit .....................................11

II.    David Robertson's Response to the Motion for Summary Judgment
       Fails to Present Competent Summary Judgment Evidence or Raise a
       Fact Issue .............................................................................................11

SUMMARY OF THE ARGUMENT ...................................................................14

ARGUMENT ...............................................................................................17

I.     Standard of Review .................................................................................17

II.    David and Oksana Robertson Executed a Binding Marital Property
       Agreement; It was David Robertson's Burden to Prove His Defense to
       the Agreement and He Failed to Do So (Germane to Points of Error
       1 & 2) ...................................................................................................18

       A.  The Texas Constitution    .....................................................................18

       B.  The Texas Family Code .......................................................................20

       C.  The Community Property Presumption ....................................................20

       D.  This is Not a Conversion Agreement ......................................................22

       E.  Enforcement of Partition and Exchange Agreements: the Burden is
           on the Party Opposing the Agreement ....................................................27

           1.  David Robertson Contends Only that He Executed the
               Agreement Involuntarily Because of Alleged Economic Duress .................29

           2.  David Robertson Fails to Raise a Fact Issue to Show Duress ........30

III.   Point of Error 3: Appellant's Argument that the Trial Court Granted More Relief than Requested has been Waived and it is Belied by the Record ...................................................................................35

IV.   Point of Error 4: Appellant's Argument that the Contract Improperly Provides Oksana Robertson with Spousal Support is Waived; It is also Wrong ...................................................................................36

V.   Point of Error 5: Appellant's Arguments Regarding Attorneys Fees are Waived, and they are Wrong ...................................................................................37

CONCLUSION ...................................................................................40

PRAYER ...................................................................................41

CERTIFICATE OF COMPLIANCE ...................................................................................43

CERTIFICATE OF SERVICE ...................................................................................43

# INDEX OF AUTHORITIES

## CASES

*Bahr v. Kohr*, 980 S.W.2d 723 (Tex.App.—San Antonio 1998, no pet.) ...............24

*Beckham Resources, Inc. v. Mantle Resources, L.L.C.*,
2010 Tex. App. LEXIS 1323(Tex.App.—Corpus Christi 2010, pet. denied)....40

*City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671
(Tex. 1979)................................................................. 18, 29, 35

*Cockerham v. Cockerham*, 527 S.W.2d 162 (Tex. 1975).......................................21

*Cooper v. Cochran*, 288 S.W.3d 522 (Tex.App.—Dallas 2009, no pet.)................34

*Crosstex Energy Servs. v. Pro Plus, Inc.*, 430 S.W.3d 384 (Tex. 2014) .................38

*Eggemeyer v. Eggemeyer*, 554 S.W.2d 137 (Tex. 1977)........................................26

*801 Nolana, Inc. v. RTC Mortgage Trust*, 944 S.W.2d 751
(Tex.App.—Corpus Christi 1997, writ denied)....................................................18

*Friedman v. Rozzlle*, 2013 Tex. App. LEXIS 14205
(Tex.App.—Corpus Christi-Edinburg 2013, pet. denied) ..................................17

*Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887 (Tex. 2000)....................38

*In re Estate of Cunningham*, 390 S.W.3d 685
(Tex. App.—Dallas 2012, no pet.) .....................................................................22

*Intercontinental Group Pship v. KB Home Lone Star L.P.*,
295 S.W.3d 650 (Tex. 2009) ..............................................................................40

*Long v. Ryan*, 2009 Tex. App. LEXIS 7448
(Tex.App.—Corpus Christi-Edinburg 2009, no pet.).......................................29

*Martin v. Martin*, 287 S.W.3d 260 (Tex. App.—Dallas 2009, pet. denied)............33

*Matelski v. Matelski*, 840 S.W.2d 124
(Tex.App.—Fort Worth 1992, no writ) ..............................................................30

*Nesmith v. Berger*, 64 S.W.3d 110 (Tex.App.—Austin 2001, pet. denied) ............33

*Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546
(Tex. 1985)....................................................................................17

*Osborn v. Osborn*, 961 S.W.2d 408
(Tex.App.—Houston [1st Dist.] 1997, pet. denied) ..............................26

*Pearson v. Fillingim*, 332 S.W.3d 361 (Tex. 2011) ...................................21

*Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217 (Tex. 1999) .....................17

*Ryland Group v. Hood*, 924 S.W.2d 120 (Tex. 1996) ..............................18

*Sanders v. Republic Nat'l Bank of Dallas*, 389 S.W.2d 551
(Tex.Civ. App.—Tyler 1965, no writ)..................................................34

*Sheshunoff v. Sheshunoff*, 172 S.W.3d 686
(Tex. App.—Austin 2005, pet. denied) .................................... 28, 30, 31, 32, 34

*Silver Lion, Inc. v. Dolphin Street, Inc.*, 2010 Tex.App. LEXIS 3873
(Tex.App.—Houston [1st Dist.] 2010, no pet.).....................................40

*Tenneco Oil Co. v. Gulsby Eng'g, Inc.*, 846 S.W.2d 599
(Tex. App. –Houston [14th Dist.] 1993, writ denied) ...........................34

*Wils v. Robinson*, 934 S.W.2d 774(Tex. App.--Houston [14th Dist.] 1996),
*writ granted, judgm't vacated w.r.m.*, 938 S.W.2d 717 (Tex. 1997)..................31

## TEXAS CONSTITUTION, STATUTES AND RULES

TEX. CONST. Art. XVI § 15................................................. 1, 2, 18, 19, 20, 22, 27

TEX. CIV. PRAC. & REM CODE § 38.001, et seq. ................................ 37, 39

TEX. FAM. CODE § 3.002 .................................................................20

TEX. FAM. CODE § 3.003(a) ...........................................................21

TEX. FAM. CODE § 3.003(b) ...........................................................21

TEX. FAM. CODE § 3.005 .......................................................... 1, 18, 20

TEX. FAM. CODE § 3.102 .................................................................21

TEX. FAM. CODE § 4.001(2) ............................................................20

TEX. FAM. CODE § 4.101 ................................................................ 1, 20

TEX. FAM. CODE § 4.102 ........................................................ 1, 18, 20

TEX. FAM. CODE § 4.103 .............................................................. 1, 18

TEX. FAM. CODE § 4.104 .............................................................. 1, 18

TEX. FAM. CODE § 4.105 ........................................................ 1, 18, 28

TEX. FAM. CODE § 4.201 ...................................................................22

TEX. FAM. CODE § 4.202 ...................................................................22

TEX. FAM. CODE § 4.203 ...................................................................22

TEX. FAM. CODE § 4.204 ...................................................................22

TEX. FAM. CODE § 4.205 ...................................................................22

TEX. R. APP. P. 33.1(a) ........................................... 29, 35, 36, 39

TEX. R. APP. P. 38.1(f) ....................................................................36

TEX. R. APP. P. 38.1(i) ...................................................... 27, 36, 38

TEX. R. APP. P. 39.1 ....................................................................... ix

TEX. R. CIV. P. 45 ..................................................................... 38, 39

TEX. R. CIV. P. 90 ...........................................................................38

TEX. R. CIV. P. 166a .......................................................................36

TEX. R. CIV. P. 166a(c) .......................................... 17, 18, 30, 35

TEX. R. EVID. 602 ...........................................................................18

## SECONDARY SOURCES

*Black's Law Dictionary,* 5th Ed. (1979) .................................................36

*O'Connor's Texas Family Law Handbook 2014*, Chapter 2, "Marital Property"...22

*The Random House College Dictionary* (Revised, 1982) .......................................36

**TO THE HONORABLE THIRTEENTH COURT OF APPEALS**:

COMES NOW Oksana Robertson, Appellee, and files her brief, establishing for the Court that the trial court's Judgment should in all things be affirmed. Most of Appellant's "Points of Error" have been waived. The others fail to properly state the law or apply it correctly to the summary judgment record. The trial court properly granted summary judgment enforcing the marital property agreement executed by the parties, pursuant to the Texas Constitution, the Texas Family Code, and the law of this state.

## STATEMENT OF THE CASE

Appellee Oksana Robertson filed an original petition for divorce from Appellant David Robertson on May 24, 2013, in the 148th Judicial District Court, Nueces County, Texas, Cause No. 2013-FAM-2820-E, the Hon. Guy Williams presiding (original petition not included in record). She filed a First Amended Petition for Divorce on November 5, 2013, asserting that the parties entered into a marital property contract and partition agreement which she sought to enforce (Supp. CR 4, 5). On March 3, 2014, Oksana Robertson filed a Traditional Motion for Partial Summary Judgment seeking an order holding that the marriage contract was binding and enforceable (CR 7-15). On June 27, 2014, the trial court granted the motion (Supp. CR 9). On July 30, 2014, the court entered a Final Decree of Divorce, ordering the division of the marital property pursuant to the terms of the partition

agreement (CR 782-792).  Appellant brings this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary in this case.  TEX. R. APP. P. 39.1.  Most of Appellant's arguments have been waived.  Any dispositive issue that does exist has been authoritatively decided.  The summary judgment record is before this Court. The decisional process would not be significantly aided by oral argument.  *Id.*

## ISSUES PRESENTED, RESTATED

1. The Texas Constitution, Family Code and the law of this State have long allowed spouses to enter into marital property agreements.  Only two defenses exist, and David Robertson asserted only one in the trial court: lack of voluntariness.  The burden is on the party refuting the validity of the agreement to prove his defense.  David Robertson failed to prove he did not execute the Partition Agreement voluntarily.  He then raises additional defenses for the first time in this Court; those have been waived. The trial court properly granted summary judgment (germane to Points of Error 1 and 2).

2. Appellant's Point of Error 3 is waived.  His assertion that the judgment is overbroad is raised for the first time in this Court.  The argument is further belied by the record.

3. Appellant's Point of Error 4 is waived.  While it is stated as a complaint about the division of post-divorce income, the argument presented is different: Appellant argues Oksana is somehow improperly receiving spousal support.  No such arguments were raised in the trial court.  Further a valid marital property agreement exists and the trial court correctly enforced it, as stated in Issues Restated 1 and 2.

4. Appellant's Point of Error 5 regarding attorney's fees is raised for the first time in this Court and is waived.  In addition the arguments fail on the merits: the pleadings are more than sufficient, and Chapter 38 is trumped by the parties' contract, which requires attorney's fees to be paid to the party enforcing the Agreement.

## STATEMENT OF FACTS

### I. Undisputed Facts: Oksana Robertson's Summary Judgment Evidence

Oksana Robertson filed a motion for summary judgment seeking the enforcement of a Partition Agreement executed by the parties during their marriage pursuant to Texas Constitution Article XVI Section 15 and Texas Family Code Sections 3.005 and 4.101-4.105 (CR 7). Because the only defenses available to a Marital Property Agreement are lack of voluntariness and unconscionability (TEX. FAM. CODE § 4.105), Oksana asserted that as a matter of law David Robertson could not prove lack of voluntariness, which was the only defense he alleged (CR 7-15, 157-170). She attached to her motion the Partition Agreement (CR 18-32), the deposition of David Robertson (CR 35- 118 [taken October 11, 2013]), the affidavit of attorney and Justice of the Peace Duncan Neblett who prepared the Agreement for the couple (CR 134-135), and the affidavit of attorney Robert W. Johnson, Jr., who had been advising the Robertsons for some time regarding various legal matters (CR 120-130). The evidence established David Robertson executed the Partition Agreement voluntarily.

#### A. David and Oksana Robertson Executed a Proper Marital Property Agreement – a Partition Agreement -- During their Marriage

David Robertson and Oksana Robertson, husband and wife at the time, entered into a "Partition of Property and Allocation of Income Agreement" on July 12, 2012

1

(CR 18-32).  The Agreement is initialed by both David and Oksana at the bottom of every page (*id*.).  Both signed the agreement before a Notary Public of the State of Texas (CR 25-27).  The Agreement states, "The parties are entering into this Agreement in accordance with article XVI, section 15, of the Texas Constitution, as amended, and relevant sections of the Texas Family Code, as amended."  (CR 18) The Agreement further states:

> The parties own certain real and/or personal property and are recipients of monthly income as described in Schedules A, B and C, which are attached to this Agreement.  The parties intend by this agreement to partition or exchange those properties between themselves and to establish the protocol for paying their monthly expenses out of the income described in Schedule C.  The Parties also intend to continue owning property jointly.  A partial list of those items is set out in Schedule D.

(CR 18).  The Partition Agreement expressly includes the following, above the signatures:

*Article 9*
*Representations and Warranties*

**WARNING**

**EACH PARTY TO THIS AGREEMENT UNDERSTANDS THAT BY SIGNING THIS DOCUMENT HE OR SHE IS PERMANENTLY SURRENDERING RIGHTS AND CLAIMS HE OR SHE WOULD OTHERWISE HAVE UNDER TEXAS LAW AND UNDER THE LAW OF OTHER JURISDICTIONS.**

(CR 24).  Immediately below this Warning are "*Representations and Warranties of Husband*," and "*Representations and Warranties of Wife*" (CR 24-26).  Under each,

2

it is stated:

1. I have carefully read each and every page of this agreement and the schedules attached and referred to, in their entirety.

2. I have been advised by attorney Duncan Neblett Jr. about the law relating to the subject matter of this agreement and about the spousal rights and liabilities of both Parties. I acknowledge that he has advised me some of the provisions of this agreement may not be enforceable.

3. I AM ENTERING INTO THIS AGREEMENT VOLUNTARILY.

4. I have given careful and mature thought to the making of this agreement.

5. I fully and completely understand each provision of this agreement, concerning both the subject matter and the legal effect. <u>I further acknowledge that this agreement was not procured by fraud, duress, or overreaching.</u>

\*\*\*\*\*\*\*\*

9. I am executing this agreement with intent to be bound fully by all its terms.

(CR 24-25, 25-26) (all caps in original, underline added).

The agreement states "Duncan Neblett, Jr. is the attorney who has prepared this agreement. However he is not representing either party, but has relied only on the information given to him by the Parties." (CR 24)

The Partition Agreement states that with respect to the property listed on Schedules A and B, the spouses are partitioning and exchanging whatever community property interest they may have in and to the property listed on one

3

another's Schedules, and the property on each spouse's Schedule is the separate property of that spouse (CR 19, 22).  The Schedules  (CR 28, 29) provide:

## Schedule A
## Property to Husband

1. Real Property, improvements, furniture and furnishings located in Junction, Texas

2. Lots 21-24 block 15, Ocean Drive, Corpus Christi, Texas

3. Handicap-equipped Van

4. All fire arms in his possession or control

5. USAA Account# 01394-8838-3 and any other bank account solely in his name

6. $3,000 in silver coins and $3000 in gold coins purchased prior to marriage

7. Any property acquired prior to marriage

8. Monthly Social Security checks currently in the monthly amount of $426.00

9. $139/week received as Workman's Compensation benefits

_____
*Initials of DAVID ROBERTSON*

*o. R.*
_____
*Initials of OKSANA ROBERTSON*

4

# Schedule B
## Property to Wife

1. Real property and improvements including furniture, furnishings and fixtures located at

   13729 Three Fathoms Bank, Corpus Christi, Texas

2. Cadillac automobile

3. Account #0310085950 at American Bank

   Account #807760927 at First Victoria Bank and any other other bank account solely in

   her name

4. Gold coins and jewelry

5. All "massage" business income

6. Any property acquired prior to marriage

_____*j)J* ._____                                          **O. R..**

*initials of DAVID ROBERTSON*                          *Initials of OKSANA ROBERTSON*

     Schedule C is an "Identification and Expense Allocation of Monthly Income received from Arrowpoint Capital," with an explicit list of the spouses' monthly expenses, including David's LVN and Companion care, and expenses associated with the separate property that was partitioned in the Agreement; the balance each month to be divided 50/50 between the parties and "shall become that party's separate property." (CR 30-31). Schedule D is a partial list of additional jointly owned property, including any proceeds from the *Robertson v. Arrowpoint Capital* litigation discussed below (CR 32).

5

**B. David Robertson's Deposition**

David Robertson testified in his deposition that he and Oksana married in 2002 (CR 40). Oksana took care of his nursing needs (CR 43). David adopted Oksana's son in 2004 (CR 105).

David testified that the night before he and Oksana went to Duncan Neblett's office in Port Aransas to execute the Partition Agreement, the document was provided to him for his review and he read it (CR 57, 58). David actually emailed Neblett back with suggested changes to the document related to his Junction, Texas property (CR 59-60). The next day, when they traveled to Port Aransas to Neblett's office, David requested another change to the document, and Neblett made that change (CR 61)

Before Duncan Neblett helped with the Partition Agreement, David Robertson drew up his own proposal for the partition of the marital property, which he sent by email to attorney Robert Johnson (CR 70, 71-72, 73, 132 [David's agreement]). David had been speaking at length with Mr. Johnson about a partition agreement (CR 72). The agreement David prepared is below:

## Division of Arrowpoint Check

- Out of the monthly check of 22,674.00, all bills will be paid, this is known as the "bills list".
   These are now (approximately 14,500).

- The remainder will be divided in half between David and Oksana (approximately $4,087 each).

- Any new bills will go onto the bill list. These will be agreed upon before hand.

- The house will be Oksana's property.

- Property pre-marriage is not community property.

- The $40,000 silver is community property.

- Any money received from the $165K settlement offer is to be divided 50/50 after expenses.

- The money in the USAA bank is David's

- Oksana's named accounts are hers.

- Partners are to settle disputes in an adult fashion. Abusive language, threats, and name calling all puts one in violation of this agreement.


X._____Date _____   x_____Date _____
David Robertson                                         Oksana Robertson

(CR 132)   As can be seen, the partition and exchange of property in David's homemade agreement looks substantially similar to the partition and exchange of property in the Partition Agreement David and Oksana signed in Judge Neblett's office (CR 28-32).

David Robertson has experience drafting his own legal documents, and with attorneys drafting documents for his execution: he drafted his own Will, then an attorney later drafted a Will for him in 2010, which he signed (CR 47-48). He said he was happy to execute both documents, because at the time of both, Oksana was

7

fearful and seemed to lack a sense of security (CR 106-107).

Despite the fact that he drafted his own Partition Agreement that looked very similar in terms of the division of property to the one he signed in Duncan Neblett's office (*compare* CR 132 *with* CR 28-32), David claimed in his deposition that Oksana "made a lot of threats about what was going to happen if I didn't sign" the Partition Agreement that was drafted by Duncan Neblett (CR 58). When asked to specify, he said Oksana told him she and two attorneys, Robert Johnson and a Mr. Kennedy, would strip him of his nursing benefits and sue his mother (CR 58, 61-62, 75-76). However, when asked to truly explain what he was talking about, David testified to the following:

Attorney Robert Johnson was the Robertsons' neighbor; he had been providing legal advice to David and Oksana regarding a lawsuit they filed against Arrowpoint Capital insurance company – the company paying David benefits -- for bad faith (CR 63-65, 68-69) (the aforementioned Mr. Kennedy is the lawyer who represents Arrowpoint Capital [CR 75]). After a time, attorney Johnson told the Robertsons he felt conflicted in their marital discourse so he could no longer represent either one of them; but David wanted Johnson to finish the Arrowpoint litigation for him (CR 65-68, 68-70, 77).

An offer to settle had been made by Arrowpoint; David felt he needed attorney Johnson to help him recover the money (CR 65-68, 68-69, 74). David Robertson

8

testified he wanted to remove the conflict between himself and Oksana – and therefore for attorney Johnson – so he could get Johnson back to complete the Arrowpoint litigation (CR 70-71, 72-73, 74-75).

David testified repeatedly, every time he was asked what was causing him stress when he signed the Partition Agreement, that he was concerned that if he did not follow through with the Arrowpoint litigation, Arrowpoint would "commit bad faith again and maybe take away my nursing benefits." (CR 68, 79, 80-81, 85, 87) He said Oksana and Johnson suggested that was a possibility (CR 79, 87). David speculated repeatedly that if attorney Johnson did not come back, his suit was over and eventually Arrowpoint was going to take his nursing check away (CR 74-75, 76-77, 80-81, 85, 87). He said the insurance company had made threats to him in the past (CR 80-81, 85). David specifically testified that he agreed to the Partition Agreement because of his fear that eventually Arrowpoint might take away his nursing benefits if he did not follow through with his current litigation against Arrowpoint (CR 86).

Ultimately, after David Robertson signed the Partition Agreement, he said he found a new lawyer; and as of the time of his deposition his settlement with Arrowpoint was in the works (CR 88-89). He also testified he and Oksana complied with the Partition Agreement after it was signed for some time, until David began diverting funds (CR 89, 90).

## C. Attorney Robert W. Johnson, Jr.'s Affidavit

Also attached to Oksana Robertson's summary judgment motion is the affidavit of attorney Robert Johnson (CR 120-122), who is Board Certified by the Texas Board of Legal Specialization in the area of Legal Professional Responsibility (CR 125).

Mr. Johnson avers he lived across the street from the Robertsons for 10 years, and in that time he advised them regarding the *Robertson v. Arrowpoint Capital* matter (CR 120). When the marital discord got to a certain level, in mid-June 2012 Mr. Johnson told the Robertsons he could no longer represent both of them in that lawsuit, and suggested several attorneys to help them with their legal matters, including Judge Duncan Neblett (CR 121).

Attorney Johnson averred that on July 30, 2012, after the Robertsons signed the July 12, 2012 Partition Agreement, David Robertson had Duncan Neblett fax the Agreement to Johnson, and David asked Johnson to help him again with the Arrowpoint Capital litigation, which Johnson did for about another year (CR 121).

Johnson averred that in all the years he counseled David Robertson, through 2013, he never had any indication that David Robertson did not trust him (CR 121). Nor did David Robertson ever contend that he was signing or had signed the Partition Agreement under duress, or that he did not understand it (CR 121, 122).

## D. Justice of the Peace Duncan Neblett's Affidavit

Judge Neblett stated in his affidavit that he had been consulting with David and Oksana Robertson, together, about a Partition Agreement since April 2012 (CR 134). David Robertson asked Neblett to forward a draft to him on May 1, which Neblett did, and David Robertson made changes and sent the draft back (id.). A final draft was provided to both parties, and on July 12, 2012 David and Oksana Robertson appeared at Neblett's office (id.). Neblett explained the document to the Robertsons, and they executed the Agreement before a Notary Public (CR 134). David Robertson wrote a check to Judge Neblett in payment for his services in preparing the Partition Agreement (CR 135). As of Neblett's September 25, 2013 affidavit, the only contact he had with the Robertsons since the execution of the Agreement was a request from each for a copy (CR 135).

## II. David Robertson's Response to the Motion for Summary Judgment Fails to Present Competent Summary Judgment Evidence or Raise a Fact Issue

David Robertson's Response to Oksana's motion for summary judgment (CR 157-170) alleged: "Petitioner's motion fails to establish her entitlement to summary judgment for three reasons. The motion improperly shifts the burden to produce evidence to Respondent; it asks this court to disregard competent summary judgment evidence favorable to nonmovant, and disregards the law applicable to spousal agreements." (CR 161). David argued that the agreement was not a partition

agreement under Family Code Section 4.102, but rather a conversion agreement under TEX. FAM. CODE §§ 4.201-.205 (CR 162-165), and that the Agreement was not executed voluntarily (CR 162, 165-166).

In support of these propositions David Robertson attached and relied on his 10-page Affidavit, signed on June 1, 2014, long after his deposition was taken in October 2013 (MSJ Response, *passim*, CR 180-189 [affidavit]). Most of the contents are irrelevant, having nothing to do with the actual execution of the Partition Agreement (*id.*). Those parts that do reference the Agreement, when read carefully, show that David Robertson's affidavit reiterates what he said in his deposition: he was afraid if he did not follow through with the Arrowpoint litigation Arrowpoint would, some time in the future, attempt to take away his nursing benefits (184-185). David Robertson thought he needed Robert Johnson to make that happen and was taking actions to get Johnson back on the case after he cited a conflict (CR 185, 186-87). David Robertson admits Robert Johnson was still representing them as late as June 13, 2012 (CR 185, 186), long after David Robertson had created his own homemade partition agreement (CR 132, 185-186). David Robertson admits in his affidavit "Drafts of possible divisions of properties and monies that I would restrict myself to using while in Junction, Texas were circulated between Oksana and I, and some were sent to Robert Johnson who was helping us resolve this issue." (CR 186, 132) At no time does David Robertson say that he was drafting possible divisions

of property and monies because of any threat Oksana made to him about Arrowpoint Capital (CR 185-186). Rather, the affidavit says at the time of those drafts he was afraid Arrowpoint might elect to take away his benefits some time in the future if he dropped the current lawsuit (*id.*).

David Robertson then states in his affidavit, with no corroboration whatsoever and completely contrary to anything he said in his deposition, that in the week before the Partition Agreement was signed Oksana "promise[d] to get my nursing benefits removed due to her promising to testify I used the money improperly." (CR 187) He also says, contrary to what he said in his deposition, that she threatened to kill various family members (CR 187).

Taking them in reverse order, David Robertson said in his deposition that the alleged threat against his family (which Oksana wholly disputes) came **after** the parties signed the Partition Agreement (CR 108) ("That came afterwards."). **More importantly, he has abandoned that argument in this Court**. The allegation of some physical threat can be dismissed out of hand.

As for the alleged threat to take his nursing benefits away, Robertson testified to no such thing in his deposition and tendered no evidence to corroborate it in his affidavit. He further confirmed his pure speculation: "Although I didn't think Mr. Kennedy [counsel for Arrowpoint] had ever been approached about this [alleged testimony from Oksana], I had no doubt she would definitely, with [Robert]

13

Johnson's help give him something worth reporting to his client that might very well cause my benefits to be lost or reduced." (CR 187)  The other witnesses in the case – both of whom are lawyers and officers of the court – testified under oath and confirmed that David Robertson executed the Partition Agreement wholly voluntarily (see above).

While David Robertson also attached the deposition of Judge Neblett to his Response (CR 223) in an apparent attempt to discredit Judge Neblett's ability to draft the Partition Agreement (CR 165-170), no argument has been raised in this Court regarding Judge Neblett, so that is moot.[1]  No other evidence is attached to David Robertsons' summary judgment response.

## SUMMARY OF THE ARGUMENT

The Texas Constitution and the Texas Family Code permit spouses to enter into marital property agreements and to gift property to one another.  That is precisely what David and Oksana Robertson did here.  They "owned certain real and/or personal property and were recipients of monthly income;" they "partitioned or exchanged those properties between themselves" and "established the protocol for paying their monthly expenses out of the income."  All property partitioned to

---

[1] David Robertson also objected to Robert W. Johnson's affidavit in his summary judgment Response (CR 161), but the objection was implicitly overruled by virtue of the trial court's order granting summary judgment (or otherwise it was not ruled on at all).  David does not challenge attorney Johnson's affidavit in his Brief in this Court.  That issue too is moot.

each spouse was deemed their separate property, and after payment of all bills associated with the partitioned property, the remainder of the income was divided equally and deemed each spouse's separate property.

This is not a conversion agreement, which expressly converts separate property into community property, usually for the purpose of tax and estate planning. The Robertsons were not tax and estate planning. Nothing in the Agreement says any item of property is separate and being converted to community. And there is no evidence that any property was actually separate property, converted to community. All the property David Robertson asserts in his brief was his separate property and somehow converted to community and given to Oksana was not given to Oksana – it went on David's Schedule A. As to Oksana's Schedule B, David does not even mention the property listed, save for the marital residence on Three Fathoms. But the house was purchased after the couple married; Oksana has an income; they paid the mortgage together for 10 years prior to executing this Agreement. The marital residence is presumed community. No property was separate property converted to community by this agreement. As for the Arrowpoint check, the same principles apply: David Robertson is permitted to gift his property, and the parties can partition and exchange all or part of their property interests. The entire marital estate was partitioned, with the expenses associated with each spouse's now-separate property being paid for as the parties agreed in Schedule C, and the remainder divided 50/50

15

each month, which "shall become that party's separate property." David Robertson admitted the parties had come to an agreement on expenses long before this Agreement was executed.

Under the Family Code and the law of this state, the burden to refute a partition and exchange agreement is on the contesting party; David Robertson misstates the law in that regard. He failed to adduce any competent evidence that he signed the Agreement under duress. His self-serving affidavit, which is largely irrelevant, is otherwise steeped in speculation. As to other points he confirms what he said in his deposition: his true concern was with getting Robert Johnson back on his case against the insurance company. There is no evidence of any actual imminent threat brought to bear on David by Oksana. Imminent threat is indeed the proper standard in family law duress cases; David misstates the law on this point as well.

Points of Error 3, 4, and 5 are all waived. None of these arguments was ever lodged in the trial court, in the summary judgment pleadings or in the motion for new trial. If the same be necessary, the judgment is not overbroad: David admits he and Oksana are one another's irrevocable beneficiaries to their life insurance policies and he agreed to that. The statement of Issue 4 and the argument lodged are entirely different; the Agreement says nothing about spousal support. This is a valid partition and income allocation agreement. Finally, Oksana expressly pleaded that she was enforcing the parties' agreement and sought attorneys fees. David filed no special

exceptions.  And the prevailing party provision in the Agreement trumps Chapter 38.

The trial court's judgment must in all things be affirmed.

## ARGUMENT

### I.      Standard of Review

To prevail on a motion for summary judgment, the movant has the burden to show there are no genuine issues of material fact and she is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999); *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985).  To meet this burden, the movant must conclusively prove all elements of her cause of action as a matter of law. *Rhone-Poulenc, Inc.*, 997 S.W.2d at 223.  The burden then shifts to the non-movant to show that genuine issues of material fact do exist.  TEX. R. CIV. P. 166a(c).   When the movant is able to show there is no genuine issue of material fact and she is entitled to judgment as a matter of law, summary judgment is proper.  TEX. R. CIV. P. 166a(c).

Summary judgment rulings are reviewed *de novo*. *Friedman v. Rozzlle*, 2013 Tex. App. LEXIS 14205, *9 (Tex.App.—Corpus Christi-Edinburg 2013, pet. denied).

Summary judgment evidence must be competent.   The affidavit of an interested party, such as the named Respondent in a divorce, must be "clear, positive

17

and direct, otherwise credible and free from contradictions and inconsistencies." TEX. R. CIV. P. 166a(c). Unsubstantiated legal and factual conclusions are no evidence. E.g., *Ryland Group v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (factual conclusions not permitted); *801 Nolana, Inc. v. RTC Mortgage Trust*, 944 S.W.2d 751, 754 (Tex.App.—Corpus Christi 1997, writ denied) (legal conclusions are no evidence). And, purely speculative statements are no evidence. TEX. R. EVID. 602.

David Robertson's argument in his brief that his affidavit was proper even without the magic words that his statements were "true and correct" (Ant Br at 12-14) misses the point entirely. The real problem with his affidavit is that it is replete with legal and factual conclusions and speculation, none of which is evidence.

Defects of substance in an affidavit can be raised for the first time on appeal. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979). David Robertson makes no such objections in this Court, but Oksana here proffers them all.

## II. David and Oksana Robertson Executed a Binding Marital Property Agreement; It was David Robertson's Burden to Prove His Defense to the Agreement and He Failed to Do So (Germane to Points of Error 1 & 2)

The Texas Constitution and the Texas Family Code expressly permit spouses to enter into marital property agreements and to gift property to one another. TEX. CONST. Art. XVI, § 15; TEX. FAM. CODE §§ 3.005, 4.102-.105.

18

### A. The Texas Constitution

The Texas Constitution provides:

§ 15.  Separate and Community Property

All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse; and <u>laws shall be passed more clearly defining the rights of the spouses, in relation to separate and community property; provided that persons about to marry and spouses, without the intention to defraud pre-existing creditors, may by written instrument from time to time partition between themselves all or part of their property, then existing or to be acquired,</u> **or** <u>exchange between themselves the community interest of one spouse or future spouse in any property for the community interest of the other spouse or future spouse in other community property</u> then existing or to be acquired, <u>whereupon</u> the portion or interest set aside to each spouse <u>shall be and constitute a part of the separate property and estate of such spouse</u> or future spouse; spouses also may from time to time, by written instrument, agree between themselves that the income or property from all or part of the separate property then owned or which thereafter might be acquired by only one of them, shall be the separate property of that spouse; <u>if one spouse makes a gift of property to the other that gift is presumed to include all the income or property which might arise from that gift of property</u>; spouses may agree in writing that all or part of their community property becomes the property of the surviving spouse on the death of a spouse; and spouses may agree in writing that all or part of the separate property owned by either or both of them shall be the spouses' community property.

TEX. CONST. Art. XVI, § 15 (emphasis added).  Therefore, pursuant to the Texas Constitution, spouses are permitted to partition or exchange between themselves all or part of their community and separate property, or exchange between themselves their community property interests in various properties.  *Id.*   They may gift their

property to one another. *Id.* That is precisely what David and Oksana Robertson did here (CR 18-32).

## B. The Texas Family Code

In compliance with the constitutional mandate, the Texas Legislature has promulgated several provisions in the Texas Family Code, such as:

Spouses are permitted to make a gift of property to one another. TEX. FAM. CODE § 3.005 ("If one spouse makes a gift of property to the other spouse, the gift is presumed to include all the income and property that may arise from that property"). In addition,

§ 4.102. Partition or Exchange of Community Property

At any time, the spouses may partition or exchange between themselves all or part of their community property, then existing or to be acquired, as the spouses may desire. Property or a property interest transferred to a spouse by a partition or exchange agreement becomes that spouse's separate property. The partition or exchange of property may also provide that future earnings and income arising from the transferred property shall be the separate property of the owning spouse.

"Property" "means an interest, present or future, legal or equitable, vested or contingent, in real or personal property, including income and earnings." TEX. FAM. CODE §§ 4.101, 4.001(2).

## C. The Community Property Presumption

In addition, "Community property consists of the property, other than separate property, acquired by either spouse during marriage." TEX. FAM. CODE § 3.002.

20

"Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX. FAM. CODE § 3.003(a) (emphasis added). "The degree of proof necessary to establish that property is separate property is clear and convincing evidence." TEX. FAM. CODE § 3.003(b). Personal earnings are community property. TEX. FAM. CODE § 3.102.

As the Texas Supreme Court has held for decades, "Parties claiming certain property as their separate property have the burden of rebutting the presumption of community property. To do so, they must trace and clearly identify the property in question as separate by clear and convincing evidence." *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011); accord *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975). "In order to overcome [the community property] presumption, the party asserting separate ownership must clearly trace the original separate property into the particular assets on hand during the marriage." *Cockerham*, 527 S.W.2d at 167.

It is important to understand that, as the Texas Supreme Court holds, the characterization and division of property as community that one party claims – but fails to prove – is separate "is not a divestiture of separate property, but a necessary classification of property as set by the community presumption." *Pearson*, 332 S.W.3d at 364.

### D. This is Not a Conversion Agreement

David Robertson claims theirs is not a partition agreement, but a conversion agreement under Texas Family Code Sections 4.201-4.205 (Ant Br at 14, 22-24). The Texas Constitution and the Texas Family Code allow: "At any time, spouses may agree that all or part of the separate property owned by either or both spouses is converted to community property." TEX. CONST. Art. XVI § 15; TEX. FAM. CODE § 4.202. A conversion agreement expressly converts separate property into community property. TEX. FAM. CODE § 4.202, 4.203. The usual purpose of such an agreement is for estate planning purposes: for instance, community property has better tax-planning benefits than does separate property. *See, O'Connor's Texas Family Law Handbook 2014*, Chapter 2, "Marital Property," at p. 171. Or, one spouse may want to ensure that his/her separate property will pass to the other spouse upon their death. *See, In re Estate of Cunningham*, 390 S.W.3d 685, 687 (Tex. App.—Dallas 2012, no pet.) (husband attempted to convert his separate real property to community property for the benefit of wife with the intent that the property would pass on his death to her; in an estate proceeding, husband's son challenged the agreement after he died).

A conversion agreement is **not** what the Robertsons executed here. They were not estate planning. Rather, the Robertsons' "Partition of Property and Allocation of Income Agreement" expressly states, at page 1, "*Stipulations*":

22

"The parties own certain real and/or personal property and are recipients of monthly income as described in Schedules A ["Property to Husband"], B ["Property to Wife"], and C ["Identification and Expense Allocation of Monthly Income Received from Arrowpoint Capital (currently $22,674.00/Mo)"], which are attached to this agreement. The parties intend by this agreement to partition or exchange those properties between themselves and to establish the protocol for paying their monthly expense out of the income described in Schedule C.

(CR 18). The Agreement then does exactly that: in "*Article 2 Partition of Property*," the spouses partition and exchange to one another "her/his community-property interest in and to all the property listed in Schedule A/B," and the property listed on each Schedule becomes that spouse's separate property (CR 19). With respect to the allocation of income, Schedule C, the Agreement clearly states that after all expenses are paid, the remainder each month will be divided between the spouses equally and "shall become that party's separate property." (CR 31) Nothing in the Agreement says that any item of property is being characterized as community property. Rather, the end result of this Agreement is that the parties' property has now been partitioned and exchanged such that each has his/her own list of separate property (CR 19-32).

In addition David Robertson has not shown that any of the property in Schedule B, "Property to Wife" (which became her separate property), was his separate property that he converted to community property (and then partitioned to Oksana as her separate property). David fails to overcome the community property presumption. To the precise contrary, in his deposition and his affidavit David

23

testified that Oksana has an income as a licensed massage therapist (CR 82, 181). The residence at Three Fathoms that was partitioned as Wife's Property was purchased in 2002 **after** David and Oksana married (CR 40, 181, 199-201), with a loan the two paid monthly for the duration of their marriage (10+ years). David testified in his deposition that he and Oksana took out a second mortgage on the family residence at Three Fathoms to purchase lots on Ocean Drive (CR 50-52, 103-104). He testified he and Oksana were originally going to build on the property and move from the Three Fathoms house (CR 103-104). Under the Partition Agreement, Oksana got the (double-mortgaged) house and David got the (debt free) Ocean Drive lots (the Court can take judicial notice of the prestige of Ocean Drive, these are not just "empty lots" as David contends in his brief) (CR 28, 29).

David Robertson did not prove by clear and convincing evidence that the Three Fathoms property partitioned to Oksana was his separate property and converted to community property. *See, e.g., Bahr v. Kohr*, 980 S.W.2d 723, 730 (Tex.App.—San Antonio 1998, no pet.) (proof of character of proceeds in bank account requires documentation about when account opened, beginning balance, debits and credits, and that there are no community funds in the account). The Three Fathoms house is presumed community property.

David presented **no** evidence that the remainder of the properties listed on Oksana's Schedule B were his separate property, converted to community property,

24

nor could he (CR 29). David makes no reference to her automobile, her two bank accounts, her gold coins and jewelry, and her massage business income in his affidavit (CR 180-88). They were further in her possession and presumed community property; otherwise they are gifts, or they are a proper exchange of the parties' property under the Texas Constitution and the Family Code (CR 29). Oksana's property acquired prior to marriage is her separate property and remains so under the Agreement (CR 29). Nothing has been converted from separate to community.

Likewise, Schedule A, "Property to Husband," partitions property to David identically. David's separate Junction property (CR 181), which he wrongly says in his brief was "divided" in the Agreement (Ant Br at 23) was **not** divided – it is still his separate property under the Agreement, as is any property he acquired prior to marriage, and his social security and workers' compensation benefits (CR 28). His guns (CR 181) and silver coins, his van, and bank accounts in his name, whether his separate property or community, have been partitioned as his separate property (CR 28). As discussed he was partitioned the couple's Ocean Drive lots, which are community property (CR 28). There is no evidence any piece of property partitioned in this Agreement was David Robertson's separate property, converted to community property.

With respect to the Arrowpoint check, Schedule C, the same principles apply.

Under the Texas Constitution and the Family Code, David Robertson is permitted to gift his property, and the parties can partition and exchange all or part of their property interests. The entire marital estate was partitioned in the agreement, with the expenses associated with each spouse's now-separate property being paid for as the parties agreed in Schedule C, and the remainder divided 50/50 each month, which "shall become that party's separate property." (CR 31) David Robertson admitted in his affidavit that the parties had come to an agreement on some expenses long before this Agreement was executed (compare CR 184 ["I agreed to limit the amount of money I spent in Junction. The figure we came up with was $5600 per month"] with CR 31 [Schedule C - $5600/month care for David if not living with wife]). He also admitted he was drafting agreements with Oksana regarding the division of money before the Partition Agreement was executed (CR 186, 182 [homemade agreement]). Nothing in the Partition Agreement states that the check is in any way being converted to community property.

David Robertson cites only two cases in his brief, *Osborn v. Osborn*, 961 S.W.2d 408 (Tex.App.—Houston [1st Dist.] 1997, pet. denied) and *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137 (Tex. 1977) (Ant Br at 23, 24) for the proposition that the agreement somehow divests him of separate property and thereby improperly converts same to community. Neither case involves a marital property agreement. Neither applies. Robertson presents no authority to support his proposition that this

26

Partition Agreement is somehow a conversion agreement. TEX. R. APP. P. 38.1(i).

Finally, David Robertson briefly mentions, in only a partial sentence, the division of the recovery from the Arrowpoint Capital litigation as some divestiture of separate property, without any discussion, analysis, or authority (Ant Br at 24). The argument is waived for failure to brief. TEX. R. APP. P. 38.1(i). But in addition, attorney Robert Johnson averred by affidavit that he was representing both Robertsons in that litigation (CR 121); indeed his decision to get off the case because of a potential conflict between David and Oksana, both of whom were his clients in that litigation, was discussed ad nauseum in the evidence, as set forth above. David Robertson cites no authority for the proposition that the proceeds from that litigation could not be partitioned in this marital property agreement.

There is no evidence any tax planning was occurring when this agreement was executed. The agreement was executed for an entirely different purpose: to partition and exchange to one another all or part of the spouses' property as separate property, and to allocate income to pay the expenses associated with that separate property (the balance each month to be divided equally as separate property). TEX. CONST. Art. XVI § 15. This is not a conversion agreement.

### E. Enforcement of Partition and Exchange Agreements: the Burden is on the Party Opposing the Agreement

With respect to enforcement of marital property partition agreements, the burden is on the party claiming the agreement is unenforceable to prove the same,

contrary to David Robertson's contention otherwise.  TEX. FAM. CODE § 4.105; *Sheshunoff v. Sheshunoff*, 172 S.W.3d 686, 694 (Tex. App.—Austin 2005, pet. denied).  "[T]he Texas Legislature [has] manifested a strong policy preference that marital property agreements should be enforced whenever persons who are married or intend to marry voluntarily enter into them." *Sheshunoff*, 172 S.W.3d at 694, 701.  Section 4.105 provides:

> § 4.105.  Enforcement
>
> (a) A partition or exchange agreement is not enforceable if the party against whom enforcement is requested proves that:
>
>> (1) the party did not sign the agreement voluntarily; or
>>
>> (2) the agreement was unconscionable when it was signed . . . .
>
> \*\*\*\*\*\*
>
> (c)  The remedies and defenses in this section are the exclusive remedies or defenses, including common law remedies or defenses.

TEX. FAM. CODE § 4.105.  Thus, only two defenses exist, lack of voluntariness and unconscionability.  *Id.*; *Sheshunoff*, 172 S.W.3d at 695.  Duress, lack of capacity, fraud, undue influence, and lack of relative bargaining power and knowledge "could bear on the ultimate determination of voluntariness." *Sheshunoff*, 172 S.W.3d at 695-96.  But while they may inform the issue, "they do not control." *Id.* at 698.

28

### 1. David Robertson Contends Only that He Executed the Agreement Involuntarily Because of Alleged Economic Duress

David Robertson has only ever alleged voluntariness; he has never alleged unconscionability, in the trial court or on appeal. And, he has never alleged lack of capacity, fraud, undue influence, or lack of relative bargaining power; he does not assert lack of knowledge in this Court. Duress is his argument. That said, we must carefully review the arguments Robertson is asserting in his brief, first to ensure they were raised in the trial court (at least one was not) and second to assess whether any evidence supports them.

First, David argues that Oksana was going to commit tortious interference with his Arrowpoint contract (Ant Br at 17-19). This argument is nowhere lodged in the trial court (CR 157-170 [Resp to MSJ], 777-780 [MNT]). There is but one paragraph in the summary judgment response about nursing benefits and it says nothing about tortious interference, or the elements thereof (CR 165). For that matter, much of the argument lodged in Appellant's Brief was not raised in the trial court (*compare* CR 165 [two-paragraph argument regarding lack of voluntariness in summary judgment response] *with* Ant Br at 17-22).

The tortious interference argument, at a minimum, has been waived. Tex. R. App. P. 33.1; *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677-78 (Tex. 1979); *Long v. Ryan*, 2009 Tex. App. LEXIS 7448, **14-15, n. 29 (Tex.App.—Corpus Christi-Edinburg 2009, no pet.) (quoting Tex. R. Civ. P.

166a(c): "issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

## 2. David Robertson Fails to Raise a Fact Issue to Show Duress

Texas Courts hold, with respect to duress:

There can be no duress unless there is a threat to do some act which the party threatening has no legal right to do. Such threat must be of such character as to destroy the free agency of the party to whom it is directed. It must overcome his will and cause him to do that which he would not otherwise do, and that which he was not legally bound to do. The restraint caused by such threat must be imminent. It must be such that the person to whom it is directed has no present means of protection.

*Sheshunoff*, 172 S.W.3d at 687 (quoting *Matelski v. Matelski*, 840 S.W.2d 124, 129 (Tex.App.—Fort Worth 1992, no writ)). David Robertson wrongly asserts in his brief that the threat need not be imminent, that "imminent" is a "criminal prosecution" standard (Ant Br at 19-20). The foregoing definition of duress in the marital property agreement context expressly requires that the restraint caused by such threat must be imminent; the person to whom it is directed must have no present means of protection.

"In deciding whether there has been undue influence, the court should consider three factors: (1) the existence and exertion of an influence; (2) whether the influence operated to subvert or overpower the person's mind when executing the document; and (3) whether the person would have executed the document but for

30

the influence." *Wils v. Robinson*, 934 S.W.2d 774, 780 (Tex. App.--Houston [14th Dist.] 1996), *writ granted, judgm't vacated w.r.m.*, 938 S.W.2d 717 (Tex. 1997).

There is no evidence of any imminent threat. The farthest David Robertson would go is to assert in his affidavit (not in his deposition) – with no corroboration whatever -- that Oksana "promised" to testify in some unidentified lawsuit (CR 187). He confirms the pure speculation of this allegation: "Although I didn't think Mr. Kennedy [counsel for Arrowpoint] had ever been approached about this [alleged testimony from Oksana], I had no doubt she would definitely, with [Robert] Johnson's help give him something worth reporting to his client that might very well cause my benefits to be lost or reduced." (CR 187) Speculation on speculation on speculation is no evidence. There was no imminent threat to do anything, let alone something illegal.

*Sheshunoff* is strikingly similar (David Robertson fails to properly analyze the case [Ant Br at 18]). The Husband tendered his own affidavit on the issue of voluntariness and contended that his wife threatened she would withdraw a loan guarantee if he did not sign the marital property agreement. *Id.*, 172 S.W.3d at 699. He contended the bank would then have the ability to cut off his line of credit. *Id.* The court of appeals held this was not evidence of an imminent threat:

> this evidence shows, at most, that Ms. Sheshunoff threatened to withdraw her loan guarantee and that her doing so would have *entitled* Bank of America to cut off the line of credit. Mr. Sheshunoff offers no proof, and only the conclusory statement in his affidavit, regarding the

likelihood that Bank of America in fact would have exercised this contractual right, at Ms. Sheshunoff's behest or otherwise.

*Id.* at 699-700 (italics in original). The court held it was <u>pure speculation</u> whether this was "the sort of imminent threat that Texas law has considered capable of overwhelming free will and rendering Mr. Sheshunoff's execution of the Marital Property Agreement involuntary." *Id.* at 700. Likewise, David's assertion that Oksana threatened to testify in an unknown lawsuit is pure speculation regarding what would happen next, at Oksana's behest or otherwise.

In addition, there is extensive evidence – from David Robertson himself and attorney witnesses -- that David was drafting partition and income allocation agreements long before the Partition Agreement was executed and threats were allegedly made. David had previously written his own will. Similarly, in *Sheshunoff*, Mr. Sheshunoff, who was attacking the agreement, failed to raise a fact issue on the issue of voluntariness because the parties had extensively negotiated the marital property agreement at issue for several months. *Id.*, 172 S.W.3d at 699. Both parties were sophisticated, and they had executed prior agreements, and understood the purpose of those agreements. *Id.* The evidence makes clear David Robertson would have executed this Agreement, or one nearly identical to it, without the alleged threats. There is no evidence – even from David himself – that his mind was overpowered when he executed the document.

David Robertson's cited case of *Martin v. Martin*, 287 S.W.3d 260, 261, 263 (Tex. App.—Dallas 2009, pet. denied) (Ant Br at 19, 21) is wholly inapposite to the record here. The husband drafted a martial property agreement that he required the wife to sign to "protect the family" from alleged financial trouble and litigation with his business. He had total control over the family's financial affairs. He refused to produce credible financial information when asked. He made constant entreaties to the wife that the family would be destroyed. And he convinced her to backdate a later-signed disclosure document associated with the property agreement. *Id.* at 263-265. This evidence came not from the affidavit of the wife, but from the deposition of the wife's attorney, who stated that "obvious pressure was being placed" on the wife to sign the document. *Id.* The attorney testified she told the wife many times not to sign the agreement but the wife was overcome by the fear that the family would be destroyed if she didn't. The record in this case has absolutely no resemblance to *Martin*.

David Robertson's case of *Nesmith v. Berger*, 64 S.W.3d 110, 114 (Tex.App.—Austin 2001, pet. denied) (Ant Br at 19) is one in which the parties negotiated their partition agreement for some time before they signed it; the fact that the husband put an internal deadline of the honeymoon to sign it did not render the agreement involuntary. Here, David Robertson drafted several partition agreements before the parties signed the one at issue. Like *Nesmith*, there is no evidence here

of any imminent threat that overcame his will.   David's cited cases of *Cooper v. Cochran*, 288 S.W.3d 522 (Tex.App.—Dallas 2009, no pet.), *Tenneco Oil Co. v. Gulsby Eng'g, Inc.*, 846 S.W.2d 599, 604 (Tex. App. –Houston [14th Dist.] 1993, writ denied), and *Sanders v. Republic Nat'l Bank of Dallas*, 389 S.W.2d 551 (Tex.Civ. App.—Tyler 1965, no writ) (Ant Br at 19, 20) do not involve marital property agreements and do not inform the issue here.

When the evidence fails to raise a fact issue on voluntariness as here, there is no need for the Court to even consider whether there was a legal right to take the threatened action complained of.  *Sheshunoff*, 172 S.W.3d at 700, n. 19.   David's evidence is identical to the evidence in *Sheshunoff* and likewise fails to raise a fact issue on voluntariness; therefore this Court need not even address his additional argument (which is based on pure speculation) that Oksana had no right to – allegedly – testify in an unknown lawsuit in the future (Ant Br at 17-19, 20-21).

Finally, David Robertson comments in his brief that Oksana allegedly threatened his life (CR 165, Ant Br at 7, 9, 16, 19).  But David does not argue here that any alleged threat of physical harm caused him to sign this Partition Agreement; he argues that was the result of "economic duress" (Ant Br at 16-22; see p. 20 at ftnt 10).  It also bears noting that David Robertson testified, in his deposition, that any alleged physical threat (which Oksana denies) "**came afterwards**," that is, after the

Partition Agreement was signed (CR 108) (emphasis added). David Robertson properly abandoned the physical threat argument in this Court.

Appellant's "Points of Error" 1 and 2 must be overruled.

## III. Point of Error 3: Appellant's Argument that the Trial Court Granted More Relief than Requested has been Waived and It is Belied by the Record

Appellant asserts that the trial court's judgment "was not supported by either the pleadings or evidence and was error" and was "an abuse of discretion," because it maintains Oksana Robertson as the beneficiary of Appellant's life insurance policy (Ant Br at 25, CR 787). That issue was never raised in the trial court (CR 157-170 [Resp to MSJ], CR 777-780 [motion for new trial]). It is waived. TEX. R. APP. P. 33.1; *City of Houston*, 589 S.W.2d at 677-78; TEX. R. CIV. P. 166a(c) ("issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

In addition, it is true and there is no dispute that Oksana Robertson is the "irrevocable beneficiary" of David Robertson's life insurance policy; likewise, David Robertson is the "irrevocable beneficiary" of Oksana Robertson's life insurance policy (for both, *see* CR 694, 706, 719, 769, 800). And the **Agreed** Temporary Orders Pending Appeal, signed by David Robertson himself (CR 798-802), specifically state and affirm that Oksana Robertson and David Robertson are the irrevocable beneficiaries of one another's life insurance policies.

35

"Irrevocable" is defined as "that which cannot be revoked or recalled." *Black's Law Dictionary*, 5th Ed. (1979); *The Random House College Dictionary* (Revised, 1982) (also, "unable to be repealed or annulled").

David Robertson fails to show any error or abuse of discretion in the trial court's maintenance of Oksana's agreed status – and David's agreed status – as the irrevocable beneficiaries of one another's life insurance policies.

## IV. Point of Error 4: Appellant's Argument that the Contract Improperly Provides Oksana Robertson with Spousal Support is Waived; It is also Wrong

Appellant states his Issue 4 as follows: "The trial court erred in making a division of post-divorce income." (Ant Br at 25)  His <u>argument</u> is something very different: he contends Oksana Robertson is improperly receiving spousal maintenance (Ant Br at 25-27).  But neither the Issue stated, which is not supported by any actual argument in violation of the Appellate Rules (TEX. R. APP. P. 38.1(f),(i)), nor the argument presented have ever been argued to the trial court.  TEX. R. APP. P. 33.1; TEX. R. CIV. P. 166a.  Nowhere in Appellant's Response to Motion for Summary Judgment (CR 157) or in his Motion for New Trial (CR 777) does Appellant make any argument regarding some impropriety regarding income or spousal maintenance.  These assertions, raised for the first time ever in the case in this appeal, are waived.  TEX. R. APP. P. 33.1; TEX. R. CIV. P. 166a.

In addition, for all the reasons set forth above, these spouses entered into a valid, proper and enforceable marital property agreement that allocated income. That agreement did not provide spousal support to Oksana and there is no reference anywhere in the agreement to any such spousal support.

## V. Point of Error 5: Appellant's Arguments Regarding Attorneys Fees are Waived, and they are Wrong

Appellant contends that attorneys fees were not properly awarded in this case for two reasons: (1) "there were no pleadings to support that award" and (2) there is "no evidence of compliance with Chapter 38 of the Civil Practice and Remedies Code." (Ant Br at 28-29). Appellant waived these arguments, and he is wrong on both counts.

As to the pleadings, Appellant cites to Volume 8 of the Reporter's Record at page 10 for the proposition that he objected that there was some alleged absence of pleadings seeking recovery of attorneys fees under the contract (Ant Br at 28). That is not what happened. Instead, when the court asked if both sides were putting on evidence of attorneys fees, both counsel stated that fees were available to the prevailing party under the parties' contract, which the court had enforced (RR 8: 9-10). Appellant's counsel told the court he thought the issue could wait, but "it was our agreement that if he desired to put on testimony as to attorneys fees and the court allowed him to do so, then we're prepared to address that issue." (id. at 9-10)

Additionally, Oksana Robertson very clearly alleged, in her First Amended Original Petition for Divorce:

### Marriage Contract

During the marriage, the parties entered into a marriage contract and partition agreement which purports to divide most or all of the assets owned by the parties. Petitioner requests that this Honorable Court enforce that Marriage Contract according to its terms.

\*\*\*\*

### Attorneys Fees, Expenses, Costs, and Interest

It was necessary for Petitioner to secure the services of Michael P. O'Reilly, a licensed attorney, to prepare and prosecute this suit. To effect an equitable division of the estate of the parties and as a part of the division, judgment for attorneys fees, expenses and costs through trial and appeal should be granted . . . .

(Supp. CR 5). Clearly Oksana Robertson stated in her pleadings that she sought enforcement of the parties' contract and attorneys fees. TEX. R. CIV. P. 45.

*First*, Appellant cites no authority in his brief for the proposition that Oksana's pleadings required more specificity. The issue is waived for failure to brief. TEX. R. APP. P. 38.1(i).

*Second*, the issue on appeal is waived because Appellant did not file special exceptions, or otherwise properly preserve his argument about some deficiency in the pleadings in the trial court. TEX. R. CIV. P. 90; *Crosstex Energy Servs. v. Pro Plus, Inc.*, 430 S.W.3d 384, 395 (Tex. 2014). Pleadings that are not challenged are construed liberally in favor of the pleader. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 897 (Tex. 2000). Appellant was fully apprised that Oksana

Robertson was seeking attorneys fees, as was made clear at the hearing (RR 8:9-10). There was no claim of surprise.

*Third*, there is no argument in the Motion for New Trial that attacks the award of attorneys fees in the judgment in any way (CR 777-780). TEX. R. APP. P. 33.1(a).

The issue has been waived for one or all of these reasons.

In addition, Oksana Robertson did specifically allege that she had a valid contract that she was seeking to "enforce," and she was seeking attorneys fees (Supp. CR 5). The contract states that "if either party brings an action or other proceeding to enforce this agreement . . . the defaulting party must pay all reasonable attorney's fees, expert's fees, and other costs of the other party." (CR 23) Oksana's pleadings are more than sufficient. In the alternative, pleadings are to be construed liberally in favor of the pleader as set forth above (see also TEX. R. CIV. P. 45 ["Pleadings shall be construed so as to do substantial justice"]). Either way, Appellant cannot prevail on the merits of his assertion that "there were no pleadings to support the award of attorneys fees."

Appellant's second argument regarding attorneys fees is that Oksana Robertson did not comply with TEX. CIV. PRAC. & REM CODE § 38.001, et seq., which governs attorneys fees for breach of contract (Ant Br at 29). The argument is misplaced. Chapter 38 is expressly trumped by prevailing party law and authority. When parties contract for the payment of attorneys fees, as here, the terms of the

contract rule, not Section 38.001. *Intercontinental Group Pship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009) (Chapter 38 is "not controlling" because the terms of the parties' agreement controls). "Parties are free to contract for a fee-recovery standard either looser or stricter than Chapter 38's . . . . In such cases, it is the language of the contract, not the statute, that governs." *Silver Lion, Inc. v. Dolphin Street, Inc.*, 2010 Tex.App. LEXIS 3873, *52 (Tex.App.—Houston [1st Dist.] 2010, no pet.). This Court must give effect to and enforce the agreement as written. *Beckham Resources, Inc. v. Mantle Resources, L.L.C.*, 2010 Tex. App. LEXIS 1323, *55 (Tex.App.—Corpus Christi 2010, pet. denied).

Oksana Robertson's counsel testified at length to prove up his attorneys fees required to enforce the parties' contract (RR 8: 11-14). Indeed at Appellant's counsel's suggestion, Oksana's counsel tendered his detailed fee bill as Exhibit 3; the two discussed it at length (RR 8: 14-18, 22-24). There was no assertion that any demand for payment or lack of payment was required, let alone omitted (*Id.*). There is no contention in this Court that attorneys fees were unnecessary or unreasonable.

Appellant's Issue 5 must in all things be overruled.

## CONCLUSION

David and Oksana Robertson executed a valid marital property agreement pursuant to the Texas Constitution and the Texas Family Code. This was not a conversion agreement, this was a partition and exchange agreement. There is no evidence any separate property was converted to community by this agreement.

40

David Robertson, being the party seeking to attack the Agreement, had the burden to prove his defense: economic duress. He failed to adduce any competent summary judgment evidence to show that Oksana imposed some imminent threat that overcame his will. The Agreement is replete with indices of voluntary execution, from initials at the bottom of every page, to Warnings, to Warranties, to signing in front of a notary. Multiple witnesses who were officers of the Court testified that David Robertson voluntarily executed the agreement.

Issues 3, 4 and 5 are all waived for failure to raise them in the trial court. On the merits they all fail as well. The judgment is not overbroad, the Agreement does not award Oksana spousal support, and Oksana expressly pleaded to enforce the Agreement and sought attorneys fees for that purpose. The prevailing party provision in the agreement trumps Chapter 38 such that the statutory provisions do not apply.

## PRAYER

WHEREFORE, Appellee Oksana Robertson prays the Court to overrule Appellant's Issues Presented, and affirm the judgment of the trial court. Oksana Robertson prays for all other relief to which she is entitled.

Respectfully submitted,

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair
State Bar No. 14650500
LAW OFFICE OF AUDREY MULLERT VICKNAIR
802 N. Carancahua Ste. 1350
Corpus Christi, TX 78401-0022
(361) 888-8413; (361) 887-6207 fax
avicknair@vicknairlaw.com

Michael P. O'Reilly
State Bar No. 153101000
LAW OFFICE OF MICHAEL P. O'REILLY
500 N. Shoreline, Ste. 604 N.
Corpus Christi, Texas 78401
(361) 887-7444; (361) 882-7463 fax
mike@oreillyfamilylaw.com

*Attorneys for Appellee Oksana Robertson*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies, pursuant to TEX. R. APP. P. 9.4(i)(2)(B), that this computer-generated brief is **9,781** words long according to the word count of the computer program used to prepare this document (Microsoft Office Word 2003/2007), from the Statement of Facts through the end of the Prayer. Typeface font is 14-point in the body and 13-point in the footnotes, if any.

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served in accordance with the Texas Rules of Appellate and Civil Procedure, on counsel named below, on this the **11th** day of May, 2015.

Mr. Clint F. Sare
P.O. Box 1694
Bryan, Texas 77806

*Attorney for Appellant David Robertson*

By tex.gov e-service

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair